SULLIVAN, PAPAIN, BLOCK,
McMANUS, COFFINAS & CANNAVO
25 Main Street – Suite 602
Hackensack, New Jersey 07601
(201) 342-0037

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF GRIMALDI DEEP SEA SPA AS OWNER/OPERATOR OF M/V GRANDE COSTA D'AVORIO FOR EXONERATION FROM OR LIMITATION OF LIABILITY | Civil Action No.: 2:23-cv-20340 **ANSWER, CLAIMS AND CROSSCLAIMS** |
| MARIA ACABOU, individually and as Administrator of the Estate of AUGUSTO ACABOU, deceased and MICHELE BROOKS, individually and as Administrator of the Estate of WAYNE BROOKS JR., deceased | In Admiralty DEMAND FOR JURY TRIAL |
|         Cross Claimants, v. | |
| AMERICAN MARITIME SERVICES OF NEW YORK, INC., PORTS AMERICA, INC., PORT NEWARK CONTAINER TERMINAL LLC, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, THE CITY OF NEWARK and THE CITY OF NEWARK FIRE DEPARTMENT, | |
|         Cross Claim Defendants. | |

**ANSWER of Claimant MARIA ACABOU, individually, and as Administrator of the Estate of AUGUSTO ACABOU, deceased and Claimant MICHELE BROOKS, individually, and as Administrator of the Estate of WAYNE BROOKS, deceased**

Claimant MARIA ACABOU, individually, and as Administrator of the Estate of AUGUSTO ACABOU, deceased and Claimant MICHELE BROOKS, individually, and as Administrator of the Estate of WAYNE BROOKS JR., deceased (hereinafter sometimes referred to as "Claimants" and/or "Respondents") answering the complaint of GRIMALDI DEEP SEA S.p.A., (hereinafter referred to as "Plaintiff") state as follows:

1.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of the complaint and respectfully refer all questions of law to the Court.

2.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "2" of the complaint and respectfully refer all questions of law to the Court.

3.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "3" of the complaint and respectfully refer all questions of law to the Court.

4.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "4" of the complaint and respectfully refer all questions of law to the Court.

5.      Claimants/Respondents deny the allegations contained in paragraph "5" of the complaint.

2

6.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "6" of the complaint and respectfully refer all questions of law to the Court.

7.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the complaint and respectfully refer all questions of law to the Court.

8.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "8" of the complaint and respectfully refer all questions of law to the Court.

9.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "9" of the complaint and respectfully refer all questions of law to the Court.

10.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "10" of the complaint and respectfully refer all questions of law to the Court.

11.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "11" of the complaint and respectfully refer all questions of law to the Court.

12.      Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the complaint and respectfully refer all questions of law to the Court.

13.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the complaint and respectfully refer all questions of law to the Court.

14.     Claimants/Respondents deny the allegations contained in paragraph "14" of the complaint and respectfully refer all questions of law to the Court.

15.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the complaint and respectfully refer all questions of law to the Court.

16.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the complaint and respectfully refer all questions of law to the Court.

17.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "17" of the complaint and respectfully refer all questions of law to the Court.

18.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "18" of the complaint and respectfully refer all questions of law to the Court.

19.     Claimants/Respondents deny the allegations contained in paragraph "19" of the complaint and respectfully refer all questions of law to the Court.

20.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "20" of the complaint and respectfully refer all questions of law to the Court.

21.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "21" of the complaint and respectfully refer all questions of law to the Court.

22.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "22" of the complaint and respectfully refer all questions of law to the Court.

23.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "23" of the complaint and respectfully refer all questions of law to the Court.

24.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "24" of the complaint and respectfully refer all questions of law to the Court.

25.     Claimants/Respondents deny the allegations contained in paragraph "25" of the complaint and respectfully refer all questions of law to the Court.

26.     Claimants/Respondents deny the allegations contained in paragraph "26" of the complaint and respectfully refer all questions of law to the Court.

27.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "27" of the complaint and respectfully refer all questions of law to the Court except that Claimants/Respondents admit that claims were made and security was demanded by counsel for the Estates of WAYNE BROOKS, deceased, and AUGUSTO ACABOU, deceased, and that security was provided in the amount of $20,000,000.00 in the form of a letter of undertaking on September 1, 2023 and that the claims asserted herein

against Plaintiff exceed the total amount for which Plaintiff may be legally responsible for pursuant to the Limitation Act.

28.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "28" of the complaint and respectfully refer all questions of law to the Court, except that Claimants/Respondents admit that Exhibit "A" was attached to the complaint.

29.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "29" of the complaint and respectfully refer all questions of law to the Court, except that Claimants/Respondents admit that Exhibit "B" was attached to the complaint.

30.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "30" of the complaint and respectfully refer all questions of law to the Court, except that Claimants/Respondents admit that Exhibit "C" was attached to the complaint.

31.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "31" of the complaint and respectfully refer all questions of law to the Court.

32.     Claimants/Respondents deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "32" of the complaint and respectfully refer all questions of law to the Court.

33.     Claimants/Respondents deny the allegations contained in paragraph "33" of the complaint and respectfully refer all questions of law to the Court.

34.     Paragraph "34" of the complaint does not state any factual allegations. As such Claimants/Respondents neither admit nor deny the contents of this paragraph and refer all questions of law to the Court, but state that these defenses are not properly pled and denies that any of those defenses are applicable herein.

## AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE:              The complaint fails to state a claim upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE:             Plaintiff had knowledge and privity that the Vessel was unseaworthy and dangerous and therefore Plaintiff is beyond the protection of the Limitation Act.

THIRD AFFIRMATIVE DEFENSE:              The security Plaintiff has posted and/or proposes to post is inadequate and the Court should order appropriate security to be filed in accordance with Supplemental Rule F.

FOURTH AFFIRMATIVE DEFENSE:             There was no comparative or contributory fault by Claimants.

FIFTH AFFIRMATIVE DEFENSE:              There is no right to exoneration of liability under the statutes alleged by Plaintiff to be applicable.

SIXTH AFFIRMATIVE DEFENSE:              The Claimants are entitled to have their claims heard by a jury in a court of their choosing, that being the U.S. District Court of the District of New Jersey.

SEVENTH AFFIRMATIVE DEFENSE:            The injuries complained of by the Claimants were caused by or contributed to by the Plaintiff and/or the cross-claim defendants (hereinafter "defendants") by the acts, omissions, fault and negligence of said Plaintiff and/or defendants and/or as a result of the violation of applicable law by the Plaintiff and defendants and Plaintiff and/or defendants are thus liable to the Claimants/Respondents herein.

EIGHTH AFFIRMATIVE DEFENSE:             There is no statutory authority by which Plaintiff may seek exoneration from liability for the incident, therefore, that portion of the Complaint must be dismissed.

7

NINTH AFFIRMATIVE DEFENSE:          The failure to comply with the Admiralty rules invalidates the claim for exoneration from or limitation of liability filed by the Plaintiff and thus, Plaintiff has lost its right to claim exoneration from and/or limitation of liability.

TENTH AFFIRMATIVE DEFENSE:          The limitation of Liability Act, 46 U.S.C. § 30501 et seq., is discriminatory in that in favors vessel owners over the Claimants/Respondents, and deprives the said Claimants/Respondents of property rights without the due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

ELEVENTH AFFIRMATIVE DEFENSE:          The Vessel was unseaworthy.

TWELFTH AFFIRMATIVE DEFENSE:          Plaintiff owned, operated, controlled, mastered and crewed the Vessel negligently, grossly negligent, and acted with reckless disregard and its acts, omissions and failures were a direct, proximate and/or indirect cause of the Claimants'/Respondents' damages.

THIRTEENTH AFFIRMATIVE DEFENSE:          Plaintiff owned, maintained, mastered, controlled, operated and crewed the Vessel negligently and/or in an unsafe and unseaworthy manner with privity and knowledge prior to the commencement of the subject voyage. Therefore, it may not maintain this action.

FOURTEETH AFFIRMATIVE DEFENSE:          The Court Lacks subject matter jurisdiction over the Complaint/Petition for Exoneration from or Limitation of Liability.

FIFTEENTH AFFIRMATIVE DEFENSE:          Pursuant to 46 U.S.C. 30512, Plaintiff is not entitled to exoneration or limitation of liability as an owner/operator who was negligent, grossly negligent, and/or acted in reckless disregard, thus causing Claimants'/Respondents' damages.

**WHEREFORE**, Claimants/Respondents demand judgment dismissing the Complaint for

Exoneration from and Limitation of Liability and the entry of an Order vacating and/or dissolving

the prior Order of this Court restraining suits.

SULLIVAN, PAPAIN, BLOCK,
McMANUS, COFFINAS & CANNAVO
*Attorneys for Claimants/Respondents/Cross-Claimants*

By: _____
        Mark A. Apostolos

DATED: April 4, 2024

8

**CLAIMS OF Claimant MARIA ACABOU, individually and as administrator of the estate of AUGUSTO ACABOU and Claimant MICHELE BROOKS, individually and as Administrator of the Estate of WAYNE BROOKS JR., deceased**

### JURY TRIAL DEMANDED

Claimant Maria Acabou, Individually, and as Administrator of the Estate of Augusto Acabou, deceased, and Claimant Michele Brooks, Individually, and as Administrator of the Estate of Wayne Brooks Jr., deceased, upon information and belief, and in further response to the Complaint and, as and for their Claims against Plaintiff, allege:

### VENUE AND PARTIES

1.      Claimants/Respondents repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

2.      This is an Admiralty and Maritime Claim within the meaning of United States Constitution, as the tortious actions, personal injuries and wrongful deaths occurred on the navigable waters of the United States and more specifically aboard the M/V GRANDE COSTA D'AVORIO, IMO No. 9465382 (hereinafter the "Vessel") while it was docked at the Port of Newark, New Jersey.

3.      Venue is proper pursuant to 28 U.S.C. § 1391 as the acts, omissions and events giving rise to Claimants claim occurred within this judicial district.

4.      On August 22, 2023, MARIA ACABOU was appointed administrator of the Estate of her son, decedent, AUGUSTO ACABOU.

5.      MARIA ACABOU presently resides at 55 ½ Goble Street, Newark, New Jersey.

6.      On August 22, 2023, MICHELE BROOKS, was appointed administrator of the Estate of her husband WAYNE BROOKS JR., deceased.

9

7.     MICHELE BROOKS presently resides at 1717 Burnet Avenue, Union, New Jersey, New Jersey.

## GENERAL FACTUAL ALLEGATIONS

8.     Claimants/Respondents repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

9.     At all times relevant, Plaintiff GRIMALDI DEEP SEA S.p.A.[1], owned the Vessel.

10.    At all times relevant, Plaintiff GRIMALDI DEEP SEA S.p.A., operated the Vessel.

11.    At all times relevant, Plaintiff GRIMALDI DEEP SEA S.p.A., maintained the Vessel.

12.    At all times relevant, Plaintiff GRIMALDI DEEP SEA S.p.A., controlled the Vessel.

13.    Plaintiff GRIMALDI DEEP SEA S.p.A., designed the Vessel.

14.    Plaintiff GRIMALDI DEEP SEA S.p.A., manufactured the Vessel.

15.    On or about July 5, 2023, the Vessel docked in Port Newark, New Jersey.

16.    On July 5, 2023, and at all times relevant herein, defendant AMERICAN MARITIME SERVICES OF NEW YORK, INC., ("AMS") was using a Jeep Wrangler as a "Pusher" to load the Vessel with used vehicles which were intended for delivery to non-U.S. ports.

17.    On July 5, 2023, and at all times relevant herein, defendant, PORTS AMERICA, INC., was using a Jeep Wrangler as a "Pusher" to load the Vessel with used vehicles which were intended for delivery to non-U.S. ports.

---

[1] At all times hereinafter mentioned, when "GRIMALDI DEEP SEA S.p.A." or "Plaintiff" is written, it is also to include, where applicable, its agents, servants and/or employees.

18.      On July 5, 2023, and at all times relevant herein, defendant, PORT NEWARK CONTAINER TERMINAL LLC, ("PNCT") was using a Jeep Wrangler as a "Pusher" to load the Vessel with used vehicles which were intended for delivery to non-U.S. ports.

19.      On July 5, 2023, and at all times relevant herein defendant, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY ("THE PORT AUTHORITY") was using a Jeep Wrangler as a "Pusher" to load the Vessel with used vehicles which were intended for delivery to non-U.S. ports.

20.      During the evening of July 5, 2023, at approximately 9:00 P.M., while the Vessel was in the process of being loaded with used vehicles, a fire started on board the Vessel within the interior of cargo deck 10.

21.      During the evening of July 5, 2023, at approximately 9:00 P.M., while the Vessel was in the process of being loaded with used vehicles by defendants AMS, PORTS AMERICA, INC., PNCT, and/or THE PORT AUTHORITY a fire started on board within the interior of cargo deck 10.

22.      At some time on July 5, 2023, the fire aboard the Vessel became uncontrollable.

23.      At some time after 9 P.M., on July 5, 2023, the City of Newark New Jersey Fire Department was notified of said fire and responded to it.

24.      On July 5, 2023, the decedents, AUGUSTO ACABOU, and WANYE BROOKS JR., ("decedents"), were employed by the City of Newark Fire Department as firefighters.

25.      On July 5, 2023, the decedents, as members of the City of Newark Fire Department, along with other firefighters employed by the City of Newark Fire Department, responded to the fire on board the Vessel.

11

26.     On July 5, 2023, decedents, along with other firefighters employed by the City of
Newark Fire Department, were ordered by the City of Newark Fire Department to fight the fire on
board the Vessel.

27.     While attempting to fight the fire on board the Vessel, decedents were caused to
suffer severe personal injuries, pain and suffering and ultimately their deaths on July 5, 2023.

28.     At all times herein mentioned, the Vessel was located within the navigable waters
of the United States, off the coast of New Jersey, and within the admiralty jurisdiction of the United
States of America.

## CLAIM AND COUNT ONE: UNSEAWORTHINESS

29.     Claimants/Respondents repeat and reallege each and every allegation stated in the
above paragraphs with the same force and effect as if set forth in their entirety.

30.     On July 5, 2023, and at all times relevant, the Vessel was equipped with a carbon
dioxide fire suppression system.

31.     At all times relevant, the fire suppression system was designed to suppress fires by
releasing carbon dioxide into a sealed area or compartment of the ship. The combination of the
compartment being sealed off from free-flowing air, and the release of carbon dioxide into that
compartment was intended suppress a fire within that compartment.

32.     At all times relevant, the Vessel could be sealed off into airtight compartments
known as Fire Zones.

33.     At all times relevant, the Vessel's fire suppression system could direct carbon
dioxide into a specific fire Zone aboard the Vessel as directed by the Captain.

34.     At all times relevant, cargo decks 6, 7, 8, 9, 10 and 11, comprised the fire Zone C
compartment aboard the Vessel.

12

35.     On July 5, 2023, the fire was initially within fire Zone C.

36.     At all times relevant, prior to the release of carbon dioxide, the fire zone compartment where the fire was located needed to be sealed shut from the natural flow of outside air.

37.     Thus, prior to the release of carbon dioxide into deck 10, the fire Zone C compartment needed to be sealed shut.

38.     At all times relevant, in order to seal off fire Zone C, the ventilation system and dampers to Zone C needed to be closed and shut off, and the two (2) water-tight doors on decks 6 and deck 12 had to be closed.

39.     At all times relevant, proper procedure required that the deck 12 water-tight door be closed prior to release of the carbon dioxide into the Zone C compartment.

40.     On July 5, 2023, at and around the time the subject fire aboard the Vessel began, the Vessel's crew initially attempted to suppress the fire on deck 10 with hose water and fire extinguishers but were unsuccessful.

41.     After failing to suppress the fire with water and fire extinguishers, the Vessel's crew prepared to suppress the subject fire with the Vessel's carbon dioxide fire suppression system.

42.     The Vessel's crew was then ordered to seal the Zone C compartment in preparation for the release of carbon dioxide, including shutting off and closing the ventilation system and dampers and closing the water tight doors on deck 6 and deck 12.

43.     On July 5, 2023, the Vessel's crew successfully shut off and closed the ventilation system and dampers to Zone C prior to the release of carbon dioxide.

44.     On July 5, 2023, the Vessel's crew successfully closed the water-tight door on deck 6 prior to the release of carbon dioxide.

13

45.     On July 5, 2023, the Vessel's crew failed to close the water-tight door on deck 12, prior to the release of carbon dioxide.

46.     As a result, Zone C was not properly sealed prior to the release of carbon dioxide on July 5, 2023.

47.     On July 5, 2023, the Vessel's crew released carbon dioxide to suppress the fire contained within Zone C, while the deck 12 water-tight door remained completely open, which permitted the continued free flow of air into the compartment and allowed oxygen to reach the fire.

48.     Because the water-tight door on deck 12 was not closed, and thus Zone C was not properly sealed shut prior to the release of the carbon dioxide, the fire was not suppressed by the Vessel's carbon dioxide fire suppression system and continued to rage and spread aboard the Vessel.

49.     At all times relevant, the control panel for the water-tight door on deck 12 was located on the inside wall of the ramp leading to said door from deck 11.

50.     Thus, a crew member had to stand inside Fire Zone C in order to close the water-tight door on Deck 12.

51.     In the event of a fire located within Zone C, the design of the water-tight door on deck 12 and its accompanying control panel required a crew member to entrap themselves within Zone C in order to close said door.

52.     Furthermore, in the event of a fire within Zone C, smoke would naturally rise and exit from the open water-tight door on deck 12, rendering operation of that door's control panel dangerous because of its location.

53.     As a result of the aforesaid, the water-tight door on deck 12 could not safely be operated and/or closed in the event of a fire within Zone C.

54.     As a result of the aforesaid, on July 5, 2023, the Vessel was unseaworthy.

55.     At the date and time alleged, the Vessel was in an unreasonably dangerous and unseaworthy condition in that, *inter alia*, the deck 12 water-tight door control panel remained within the interior of the Zone C compartment rendering it impossible for a crew member, without risking their own life, to close the deck 12 water-tight door during a fire within the vicinity of that door; the deck 12 water-tight door and its accompanying control panel were not maintained in a working, reasonably safe and/or seaworthy condition; the control panel for the water-tight door on deck was not positioned and/or located in a reasonably safe location; the deck 12 water-tight door was not operational and/or functional due to the negligence of the Plaintiff; and for the other defective conditions of the Vessel which the proofs will show, rendered the Vessel unseaworthy, defective and dangerous and otherwise unfit and unseaworthy for the purpose for which it was being used.

56.     As a result of the unseaworthy and dangerous condition of the Vessel, including but not limited, those conditions described herein above, Plaintiff, its agents, servants, employees, crew and/or Master, were unable to close the deck 12 water-tight door and thus suppress the aforementioned fire.

57.     After the fire suppression system failed to suppress the fire, decedents were ordered to board the Vessel and fight the fire, which resulted in them suffering serious and severe pain and suffering, and ultimately death.

58.     At the date and time alleged and for some time prior thereto, including prior to the commencement of the Vessel's subject voyage, the Vessel was not safe, staunch, properly

equipped, supplied or seaworthy; Plaintiff failed to maintain said Vessel and its equipment and appliances in a safe and seaworthy condition; and/or the Vessel was not reasonable safe or suitable to perform its intended voyage.

59.    The Vessel was permitted and allowed to go upon the waters in an unsafe and unseaworthy condition and that such condition of said Vessel and any and all damages, injuries and deaths of decedents were done, occasioned and occurred with the privity and/or knowledge of the Plaintiff, their agents, servants or employees at or prior to the commencement of the subject voyage.

60.    The Plaintiff, its master, and/or the owner's superintendent and/or managing agent, had privity and/or knowledge of the aforementioned negligence, dangerous and/or unseaworthy condition of the Vessel prior to the commencement of the subject voyage.

61.    Plaintiff is liable to Claimants for owning, operating, maintaining and controlling the Vessel in an unreasonably dangerous and unseaworthy condition.

62.    Claimants reserve the right to make claims against the Plaintiff and the Vessel for such other, further and different faults, negligence, carelessness, recklessness and unseaworthiness as the evidence in this case may disclose.

63.    Claimants further allege that Plaintiff breached a nondelegable duty in permitting the Vessel, its appliances, and appurtenances in general, to go upon the waters in an unsafe and unseaworthy condition and that any and all damages, injuries and the deaths of decedents were caused by the Vessel and its crew, and were done, occasioned and occurred with the privity and/or knowledge of Plaintiff, at or prior to the commencement of the voyage and during said voyage upon which the Vessel was then engaged.

64.     Plaintiff, its agents, servants, and/or employees had actual and/or constructive notice of the aforementioned unsafe, dangerous and unseaworthy conditions and failed to remedy them prior to the subject occurrence taking place and/or prior to the commencement of the subject voyage.

65.     Plaintiff, its agents, servants, and/or employees caused and created the aforementioned unsafe, dangerous and unseaworthy conditions and failed to remedy them prior to the commencement of the subject voyage and prior to the subject occurrence.

66.     The unseaworthy and/or dangerous condition of the Vessel, including but not limited to, those conditions described herein above, was the direct and/or indirect cause of, and a substantial factor in causing decedents' pain and suffering, injuries and death.

67.     As a result of the aforesaid negligence of Plaintiff and the unseaworthiness of the Vessel, decedents sustained serious and permanent personal injuries, including scarring, disfigurement, pain and suffering, suffocation, and death.

68.     The subject injuries and deaths that decedents suffered were not caused or contributed to by any fault or negligence on the part of decedents.

## CLAIM AND COUNT TWO: NEGLIGENCE

69.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

70.     At all times relevant, Plaintiff as owner of the Vessel owed a legal duty under the circumstances to maintain, operate and control the Vessel with reasonable care and in a reasonable safe condition under the circumstances.

71.     At all times relevant, Plaintiff, its master, agents, servants and/or employees, breached the aforementioned duty and/or were negligent, careless and reckless in the ownership,

17

operation, management, maintenance and control of the Vessel, *inter alia*, in failing to sufficiently suppress the fire; in failing to properly deploy the Vessel's fire suppression system; in negligently causing the fire; in negligently allowing the fire to spread and become uncontrollable; in failing to follow protocol in suppressing a fire; in failing to seal and/or close the Vessel's compartments so as to properly deploy the CO2 fire suppression system; in failing to maintain the Vessel's parts, doors and components necessary to sufficiently suppress the fire; in failing to maintain the Vessel in a seaworthy condition (as is more thoroughly set forth herein); in failing to move and/or reposition the deck 12 water-tight door control panel to an area *outside* the compartment intended to be sealed for deployment of the CO2 fire suppression system; in failing to properly respond to the fire; in negligently allowing and permitting an unqualified individual to function in the capacity of Master; in failing to provide proper and appropriate training in deploying the Vessel's fire suppression system; in negligently causing and/or allowing the City of Newark Fire Department, including decedents, to enter the ship in an attempt to suppress the fire within the cargo compartments; in improperly attempting to suppress the subject fire; in failing to properly train and drill the Vessel's crew on suppressing ship board fires, including but not limited to, ship board fires within the interior cargo compartments while the Vessel is docked; in failing to provide the land based fire fighters, including but not limited to decedents, with sufficient information; in permitting a dangerous and defective condition to exist aboard the Vessel; in causing and creating a dangerous and defective condition aboard the Vessel; in failing to timely advise the local fire department of the subject fire; in otherwise being negligent in causing and contributing to the fire and the spread of the fire; in otherwise being negligent and causing and contributing to the death of decedents.

72.     Plaintiff its agents, servants, and/or employees were negligent, careless and reckless in causing and/or contributing to the injuries and deaths of decedents.

73.     Plaintiff its agents, servants, and/or employees had actual and/or constructive notice of the aforementioned unsafe, dangerous and unseaworthy conditions and failed to remedy them prior to the commencement of the subject voyage and the subject occurrence taking place.

74.     Plaintiff its agents, servants, and/or employees caused and created the aforementioned unsafe, dangerous and unseaworthy conditions and failed to remedy them prior to the commencement of the subject voyage and the subject occurrence taking place.

75.     The negligence of Plaintiff and/or the unseaworthy and/or dangerous condition of the Vessel, including but not limited to, those conditions described herein above, was the direct and/or indirect cause of, and a substantial factor in causing decedents' pain and suffering, injuries and death.

76.     As a result of the aforesaid negligence of the Plaintiff, decedents sustained serious and permanent personal injuries, including scarring, disfigurement, pain and suffering, suffocation, and death.

77.     The Plaintiff, its master, and/or the owner's superintendent and/or managing agent, had privity and/or knowledge of the aforementioned negligence and unseaworthy condition of the Vessel prior to the commencement of the subject voyage.

78.     The subject injuries and deaths that decedents suffered were not caused or contributed to by any fault or negligence on the part of decedents.

## CLAIM AND COUNT THREE: LIABILITY PURSUANT TO N.J.S.A.
## 2A:62A-21

79.    Claimants repeat and reallege each and every allegation stated in the above
paragraphs with the same force and effect as if set forth in their entirety.

80.    N.J.S.A. 2A:62A-21 states:

In addition to any other right of action or recovery otherwise available under law,
whenever any law enforcement officer, firefighter, or member of a duly
incorporated first aid, emergency, ambulance or rescue squad association suffers
any injury, disease or death while in the lawful discharge of his official duties and
that injury, disease or death is directly or indirectly the result of the neglect, willful
omission, or willful or culpable conduct of any person or entity, other than that law
enforcement officer, firefighter or first aid, emergency, ambulance or rescue squad
member's employer or co-employee, the law enforcement officer, firefighter, or
first aid, emergency, ambulance or rescue squad member suffering that injury or
disease, or, in the case of death, a representative of that law enforcement officer,
firefighter or first aid, emergency, ambulance or rescue squad member's estate, may
seek recovery and damages from the person or entity whose neglect, willful
omission, or willful or culpable conduct resulted in that injury, disease or death.

81.    At all times relevant, Decedents, were active firefighters with the City of Newark
Fire Department, attempting to fight the fire aboard the Vessel at and around the time that they
suffered personal injuries and ultimately death.

82.    At the time of their personal injuries and death, decedents were following official
orders from the City of Newark Fire Department to suppress the fire aboard the Vessel.

83.    At all times relevant, decedents' injuries and deaths took place during the lawful
discharge of their official duties with the City of Newark Fire Department.

84.    At all times relevant, Plaintiff, its master, agents, servants and/or employees,
breached the aforementioned duty and/or were negligent, careless and reckless in the ownership,
operation, management, maintenance and control of the Vessel, *inter alia*, in failing to sufficiently
suppress the fire; in failing to properly deploy the Vessel's fire suppression system; in negligently

causing the fire; in negligently allowing the fire to spread and become uncontrollable; in failing to follow protocol in suppressing a fire; in failing to seal and/or close the Vessel's compartments so as to properly deploy the CO2 fire suppression system; in failing to maintain the Vessel's parts, doors and components necessary to sufficiently suppress the fire; in failing to maintain the Vessel in a seaworthy condition (as is more thoroughly set forth herein); in failing to move and/or reposition the deck 12 water-tight door control panel to an area *outside* the compartment intended to be sealed for deployment of the CO2 fire suppression system; in failing to properly respond to the fire; in negligently allowing and permitting an unqualified individual to function in the capacity of Master; in failing to provide proper and appropriate training in deploying the Vessel's fire suppression system; in negligently causing and/or allowing the City of Newark Fire Department, including decedents, to enter the ship in an attempt to suppress the fire within the cargo compartments; in improperly attempting to suppress the subject fire; in failing to properly train and drill the Vessel's crew on suppressing ship board fires, including but not limited to, ship board fires within the interior cargo compartments while the Vessel is docked; in failing to provide the land based fire fighters, including but not limited to decedents, with sufficient information; in permitting a dangerous and defective condition to exist aboard the Vessel; in causing and creating a dangerous and defective condition aboard the Vessel; in failing to timely advise the local fire department of the subject fire; in otherwise being negligent in causing and contributing to the fire and the spread of the fire; in otherwise being negligent and causing and contributing to the death of decedents.

85.     Plaintiff its agents, servants, and/or employees were negligent, careless and reckless in causing and/or contributing to the injuries and deaths of decedents.

21

86.     Plaintiff its agents, servants, and/or employees had actual and/or constructive notice of the aforementioned unsafe, dangerous and unseaworthy conditions and failed to remedy them prior to the commencement of the subject voyage and the subject occurrence taking place.

87.     Plaintiff its agents, servants, and/or employees caused and created the aforementioned unsafe, dangerous and unseaworthy conditions and failed to remedy them prior to the commencement of the subject voyage and the subject occurrence taking place.

88.     The negligence of Plaintiff and/or the unseaworthy and/or dangerous condition of the Vessel, including but not limited to, those conditions described herein above, was the direct and/or indirect cause of decedents' pain and suffering, injuries and death.

89.     As a result of the aforesaid negligence of the Plaintiff, decedents sustained serious and permanent personal injuries, including scarring, disfigurement, pain and suffering, suffocation, and death.

90.     The Plaintiff, its master, and/or the owner's superintendent and/or managing agent, had privity and/or knowledge of the aforementioned negligence and unseaworthy condition of the Vessel prior to the commencement of the subject voyage.

91.     The subject injuries and deaths that decedents suffered were not caused or contributed to by any fault or negligence on the part of decedents.

## CLAIM AND COUNT THREE: PRODUCT LIABILITY

92.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

93.     As a result of the aforesaid, Plaintiff is liable to Claimants under the New Jersey Products Liability act, N.J.S.A. 2A:58C-1, et. Seq. for the injuries, death and damages sustained.

## CLAIM AND COUNT FOUR: PER QUOD

94.    Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

95.    On July 5, 2023, by reason of the foregoing, claimant MICHELE BROOKS suffered a loss of the services and consortium of her spouse, WAYNE BROOKS JR., and was forced to incur hospital, medical and other bills, all as a result of the aforementioned negligence, carelessness, recklessness of Plaintiff and/or unseaworthiness of the Vessel, as is more thoroughly set forth in the above counts.

## CLAIM AND COUNT FIVE: WRONGFUL DEATH PURSUANT TO GENERAL MARITIME LAW

96.    Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

97.    Decedent, AUGUSTO ACABOU, died on July 5, 2023, as a direct, indirect and/or proximate cause of the negligence, carelessness, recklessness of Plaintiff and/or the unseaworthiness of the Vessel, as is more thoroughly set forth in the above counts.

98.    Decedent, AUGUSTO ACABOU, left surviving his heirs at law all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

99.    Decedent, WAYNE BROOKS, died on July 5, 2023, as a direct, indirect and/or proximate cause of the negligence, carelessness, recklessness of Plaintiff and/or the unseaworthiness of the Vessel, as is more thoroughly set forth in the above counts.

100.    Decedent, WAYNE BROOKS, left surviving his heirs at law, including but not limited to his spouse, MICHELE BROOKS, and his children, all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

101.    This action and count are brought to recover damages for decedents' wrongful death pursuant to general maritime law.

## CLAIM AND COUNT SIX: WRONGFUL DEATH PURSUANT TO NEW JERSEY STATE LAW

102.    Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

103.    Decedent, AUGUSTO ACABOU, died on July 5, 2023, as a direct, indirect and/or proximate cause of the negligence, carelessness, recklessness of Plaintiff and/or the unseaworthiness of the Vessel, as is more thoroughly set forth in the above counts.

104.    Decedent, AUGUSTO ACABOU, left surviving his heirs at law all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

105.    Decedent, WAYNE BROOKS, died on July 5, 2023, as a direct, indirect and/or proximate cause of the negligence, carelessness, recklessness of Plaintiff and/or the unseaworthiness of the Vessel, as is more thoroughly set forth in the above counts.

106.    Decedent, WAYNE BROOKS, left surviving his heirs at law, including but not limited to his spouse, MICHELE BROOKS, and his children, all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

107.    This action and count are brought to recover damages for decedents' wrongful death pursuant to N.J.S.A. 2A:31-1, et. seq., and has been commenced within two (2) years of the date of decedents' death.

**WHEREFORE**, Claimants demand judgment against Plaintiff, jointly and/or severally, on all counts for damages in the amount of fifty million and 00/100 dollars ($50,000,000.00)

together with attorneys' fees, interest and costs of suit and other such relief the Court deems necessary and proper. Claimants further ask:

1.    That an Order be entered herein that Plaintiff is not entitled to exoneration from or limitation of liability herein;

2.    That an Order be entered determining that the occurrence referred to in the complaint happened with the privity and knowledge of the Plaintiff;

3.    That an Order be entered permitting Claimants to pursue this action to recover damages against Plaintiff for the injuries, damages and losses sustained as aforesaid; and that it be tried by a jury;

4.    That Claimants be permitted to pursue their claims against such other persons and entities who were also at fault in causing the aforesaid injuries and damages;

5.    That Claimants be awarded such compensatory damages, attorneys fees and costs as found by the trier of fact, as prayed for herein, and have judgement entered thereon; and

6.    That Claimants are entitled to such other and further relief as the court deems is warranted under the circumstances.

SULLIVAN, PAPAIN, BLOCK,
McMANUS, COFFINAS & CANNAVO
*Attorneys for Claimants/Respondents/Cross-Claimants*

By:    _____
Mark A. Apostolos

DATED: April 4, 2024

**CROSS CLAIMS AGAINST DEFENDANTS AMERICAN MARITIME SERVICES OF NEW YORK, INC., PORTS AMERICA, INC., PORT NEWARK CONTAINER TERMINAL LLC, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, THE CITY OF NEWARK and THE CITY OF NEWARK FIRE DEPARTMENT**

Claimant Maria Acabou, Individually, and as Administrator of the Estate of Augusto Acabou, deceased, and Claimant Michele Brooks, Individually, and as Administrator of the Estate of Wayne Brooks Jr., deceased, upon information and belief, as and for their cross claims against the defendants hereby allege as follows:

## VENUE AND JURISDICTION

1.       Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

2.       These are Admiralty and Maritime Claims within the meaning of United States Constitution, as the tortious actions, personal injuries and wrongful deaths occurred on the navigable waters of the United States and more specifically aboard the Vessel while it was docked at the Port of Newark, New Jersey.

3.       Venue is proper pursuant to 28 U.S.C. § 1391 as the acts, omissions and events giving rise to plaintiff's claim occurred within this judicial district.

4.       This action and the cross claims herein are brought pursuant to General Maritime Law and the Admiralty and Maritime jurisdiction exercised by this Court. Northing in these jurisdictional allegations is to be construed as a waiver of Claimants' right to a jury trial in Claimants action, nor the right to have all of the claims asserted herein tried to a jury, at plaintiff's option.

## **PARTIES**

5.     At all times relevant, defendant AMERICAN MARITIME SERVICES OF NEW YORK, ("AMS"[2]), is a for-profit corporation duly licensed to do business in the State of New Jersey.

6.     At all times relevant, defendant AMS had a place of business at 138 Marsh Street, Newark, New Jersey and was engaged in the business of supplying labor for the loading and discharge of vessels in Port Newark, New Jersey.

7.     At all times relevant, defendant PORTS AMERICA, INC.[3], is a for-profit corporation duly licensed to do business in the State of New Jersey.

8.     At all times relevant, defendant PORTS AMERICA, INC., had a place of business at 171 Marsh Street, Newark, New Jersey and was engaged in the business of loading and discharging vessels in Port Newark, New Jersey.

9.     At all times relevant, defendant PORT NEWARK CONTAINER TERMINAL LLC ("PNCT"[4]) is a limited liability company duly licensed to do business in the State of New Jersey.

10.     At all times relevant, defendant PNCT had a place of business at 241 Calcutta Street, Newark, New Jersey and was engaged in the business of loading and discharging vessels in Port Newark, New Jersey.

---

[2] At all times hereinafter mentioned, when "AMS" is written, it is also to include, where applicable, its agents, servants and/or employees.
[3] At all times hereinafter mentioned, when "PORTS AMERICA, INC." is written, it is also to include, where applicable, its agents, servants and/or employees.
[4] At all times hereinafter mentioned, when "PNCT" is written, it is also to include, where applicable, its agents, servants and/or employees.

11.     At all times relevant, defendant THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY ("THE PORT AUTHORITY"[5]), is a body politic created and existing under and by virtue of the laws of the State of New York and New Jersey.

12.     At all times relevant, defendant THE PORT AUTHORITY had its principal office at New York Marine Terminals, 90 Columbia Street, Brooklyn, New York and an office for business at 260 Kellogg Street, Port Newark, New Jersey.

13.     Prior to the commencement of this action, and on September 21, 2023, plaintiff duly served a written Notice of Claim on defendant THE PORT AUTHORITY, setting forth the time when and the location where the event which is the subject of this lawsuit occurred, including, the nature of the claim asserted, the extent of the injuries and damages sustained, and the amount claimed.

14.     At all times relevant, defendant THE CITY OF NEWARK[6], was and still is a public entity existing under and pursuant to the laws of the State of New Jersey.

15.     At all times relevant, defendant THE CITY OF NEWARK FIRE DEPARTMENT[7], was and still is a public entity existing under and pursuant to the laws of the State of New Jersey.

16.     On September 21, 2023, plaintiff duly served a written Notice of Claim on defendants THE CITY OF NEWARK and THE CITY OF NEWARK FIRE DEPARTMENT, setting forth the time when and the location where the event which is the subject of this lawsuit occurred, including, the nature of the claim asserted, the extent of the injuries and damages sustained, and the amount claimed.

---

[5] At all times hereinafter mentioned, when "THE PORT AUTHORITY" is written, it is also to include, where applicable, its agents, servants and/or employees.
[6] At all times hereinafter mentioned, when "THE CITY OF NEWARK" is written, it is also to include, where applicable, their agents, servants and/or employees.
[7] At all times hereinafter mentioned, when "THE CITY OF NEWARK FIRE DEPARTMENT" is written, it is also to include, where applicable, their agents, servants and/or employees.

17.     Said notices of claim were presented to each of the aforesaid defendants within ninety (90) days of the date of the occurrence.

18.     More than 6 months have elapsed since the service of said notice of claim and, to date, defendants have failed and neglected to make any payment of such claim.

## GENERAL FACTUAL ALLEGATIONS

19.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

20.     On July 5, 2023, while the Vessel was docked in Port Newark, New Jersey, it was being loaded with used vehicles, intended for delivery to non-U.S. ports.

21.     On July 5, 2023, and at all times relevant herein, defendant AMS was loading the Vessel with said used vehicles.

22.     On July 5, 2023, and at all times relevant herein, PORTS AMERICA, INC., was loading the Vessel with said used vehicles.

23.     On July 5, 2023, and at all times relevant herein, PNCT, was loading the Vessel with said used vehicles.

24.     On July 5, 2023, and at all times relevant herein, THE PORT AUTHORITY, was loading the Vessel with said used vehicles.

25.     On July 5, 2023, and for some time prior, as well as immediately prior to the fire starting aboard the Vessel, defendants AMS, PORTS AMERICA, INC., PNCT, and/or THE PORT AUTHORITY were using a Jeep Wrangler as a "pusher" vehicle (hereinafter "the pusher vehicle") to load the Vessel with said used vehicles.

26.     On July 5, 2023, the fire started within the pusher vehicle while it was aboard the Vessel on deck 10 in the process of loading cargo.

27.     Thereafter, the fire from the pusher vehicle spread aboard the Vessel and became uncontrollable.

28.     At some point thereafter on July 5, 2023, The City of Newark and its Fire Department responded to notification of said fire.

29.     On July 5, 2023, and for some time prior, the decedents, AUGUSTO ACABOU, and WANYE BROOKS JR., ("decedents"), were employed by the City of Newark Fire Department as firefighters.

30.     On July 5, 2023, the decedents, as members of THE CITY OF NEWARK FIRE DEPARTMENT, were ordered to board and fight the fire on the Vessel.

31.     While attempting to fight the subject fire aboard the Vessel, decedents were caused to suffer personal injuries, pain and suffering and ultimately death on July 5, 2023.

32.     On July 5, 2023, defendant AMS, owned the pusher vehicle.

33.     On July 5, 2023, defendant, AMS, operated the pusher vehicle.

34.     At all times relevant, defendant, AMS, maintained the pusher vehicle.

35.     At all times relevant, defendant, AMS, controlled the pusher vehicle.

36.     On July 5, 2023, defendant PORTS AMERICA, INC., owned the pusher vehicle.

37.     On July 5, 2023, defendant, PORTS AMERICA, INC., operated the pusher vehicle.

38.     At all times relevant, defendant, PORTS AMERICA, INC., maintained the pusher vehicle.

39.     At all times relevant, defendant, PORTS AMERICA, INC., controlled the pusher vehicle.

40.     On July 5, 2023, defendant PNCT, owned the pusher vehicle.

41.     On July 5, 2023, defendant, PNCT, operated the pusher vehicle.

42.    At all times relevant, defendant, PNCT, maintained the pusher vehicle.

43.    At all times relevant, defendant, PNCT, controlled the pusher vehicle.

44.    On July 5, 2023, defendant THE PORT AUTHORITY, owned the pusher vehicle.

45.    On July 5, 2023, defendant, THE PORT AUTHORITY, operated the pusher vehicle.

46.    At all times relevant, defendant, THE PORT AUTHORITY, maintained the pusher vehicle.

47.    At all times relevant, defendant, THE PORT AUTHORITY, controlled the pusher vehicle.

48.    At all times relevant, defendant THE CITY OF NEWARK, owned, operated, maintained and controlled the City of Newark Fire Department.

49.    On July 5, 2023, defendant AMS, owned the port location where the Vessel was docked in Newark, New Jersey on July 5, 2023 (hereinafter "the subject port").

50.    On July 5, 2023, defendant AMS, operated the subject port.

51.    On July 5, 2023, defendant AMS, maintained the subject port.

52.    On July 5, 2023, defendant AMS, controlled the subject port.

53.    On July 5, 2023, defendant PORTS AMERICA, INC., owned the subject port.

54.    On July 5, 2023, defendant PORTS AMERICA, INC., operated the subject port.

55.    On July 5, 2023, defendant PORTS AMERICA, INC., maintained the subject port.

56.    On July 5, 2023, defendant PORTS AMERICA, INC., controlled the subject port.

57.    On July 5, 2023, defendant PNCT, owned the subject port.

58.    On July 5, 2023, defendant PNCT, operated the subject port.

59.    On July 5, 2023, defendant PNCT, maintained the subject port.

31

60.     On July 5, 2023, defendant PNCT, controlled the subject port.

61.     On July 5, 2023, defendant THE PORT AUTHORITY, owned the subject port.

62.     On July 5, 2023, defendant THE PORT AUTHORITY, operated the subject port.

63.     On July 5, 2023, defendant THE PORT AUTHORITY, maintained the subject port.

64.     On July 5, 2023, defendant THE PORT AUTHORITY, controlled the subject port.

## COUNT ONE: NEGLIGENCE AS TO DEFENDANTS AMS, PORTS AMERICA, INC., PNCT and THE PORT AUTHORITY

65.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

66.     At all times relevant, defendants, AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY, owed a legal duty to own, maintain, operate and/or control the subject port, the cargo, the pusher vehicle, and all other vehicles and/or equipment being used to load cargo aboard the Vessel in a reasonable safe manner and with reasonable care under the circumstances.

67.     At all times relevant, the defendants AMS, PORTS AMERICA, INC., PNCT and THE PORT AUTHORITY, breached their aforementioned duties and/or were negligent, careless and reckless in the ownership, operation, maintenance and control of the subject port, the cargo, the pusher vehicle, and all other vehicles and/or equipment being used to load cargo aboard the Vessel *inter alia*, in negligently starting and/or causing the fire; in failing to maintain the pusher vehicle in safe condition; in failing to properly service the pusher vehicle; in using improper vehicles and/or equipment to load cargo aboard the Vessel; in negligently maneuvering and/or pushing the cargo onto the Vessel so as to cause the fire; in failing to take the pusher vehicle out of service; in negligently using the pusher vehicle to push cargo onto the Vessel despite known mechanical issues; in negligently modifying the pusher vehicle; in failing to correct a dangerous

32

and defective condition within the pusher vehicle; in negligently allowing and causing the pusher vehicle to overheat and start a fire; in failing to use the appropriate type of vehicle and/or equipment to push the cargo aboard the Vessel; in failing to suppress and/or fight the fire; in failing to alert the Vessel's crew of the fire in a timely manner; in failing to notify the local fire department of the subject fire in a timely manner; in failing to properly supervise and control the subject port; in otherwise being negligent in causing and contributing to the fire and the spread of the fire.

68.     At all times relevant, the defendants AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY, were on actual and/or constructive notice of the dangerous and defective condition(s) that caused the subject fire and the injuries and deaths sustained by decedents.

69.     At all times relevant, the defendants AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY, caused and created the dangerous and defective condition(s) that caused the subject fire and the injuries and deaths sustained by decedents.

70.     The aforementioned negligence was a direct and proximate cause and/or substantial factor in causing decedents' pain and suffering, injuries and death.

71.     As a result of the aforesaid negligence of defendants AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY, decedents sustained serious and permanent personal injuries, including scarring, disfigurement, pain and suffering, suffocation, and death.

72.     The subject injuries and deaths that decedents suffered were not caused or contributed to by any fault or negligence on the part of decedents.

## COUNT TWO – NEGLIGENCE AS TO DEFENDANTS THE CITY OF NEWARK AND THE CITY OF NEWARK FIRE DEPARTMENT

73.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

74.     On July 5, 2023, neither decedents, nor other firefighters of the City of Newark Fire Department, were sufficiently trained and/or equipped to fight a fire aboard a ship, such as the subject Vessel.

75.     Despite their lack of training, equipment and manpower, decedents were ordered by their superior officers in the City of Newark Fire Department, acting as agents, servants, and/or employees of defendants THE CITY OF NEWARK and/or THE CITY OF NEWARK FIRE DEPARTMENT, to respond to the fire aboard the Vessel on July 5, 2023.

76.     On July 5, 2023, and prior thereto, defendants THE CITY OF NEWARK and THE CITY OF NEWARK FIRE DEPARTMENT, were negligent, careless and reckless in their operation, maintenance and control of the City of Newark Fire Department, in failing to properly train and equip the City of Newark Fire Department firefighters, including decedents, to suppress fires on board ocean-going ships, including, but not limited to, "Ro-Ro" style ships such as the subject Vessel; in negligently ordering the City of Newark Fire Department firefighters, including the decedents, to board the Vessel on July 5, 2023, to suppress a fire that they were not sufficiently trained and/or equipped to suppress; in failing to provide appropriate man power for suppressing the fire on board the subject Vessel; in ordering decedents to suppress the fire on board the subject Vessel without sufficient manpower, equipment, training and/or knowledge; in negligently and improperly suppressing the fire on board the Vessel; in negligently causing and creating an exceptionally and unreasonably dangerous/hazardous situation in which decedents were required

34

to work; in otherwise acting negligently, intentionally and/or with gross negligence in causing and contributing to the personal injuries, pain and suffering and death of the decedents.

77.     As a result of the negligence of defendants' THE CITY OF NEWARK and/or THE CITY OF NEWARK FIRE DEPARTMENT, Claimants sustained a serious, permanent personal injuries and permanent loss of a bodily function, as defined in N.J.S.A. 59:9-2.

78.     Defendants THE CITY OF NEWARK and THE CITY OF NEWARK FIRE DEPARTMENT were on actual and/or constructive notice of the fact that their firefighters had not been provided with the training, knowledge, equipment and/or manpower necessary to enable them to fight shipboard fires safely.

79.     The aforementioned negligence, acts and/or omissions were the direct and proximate cause and/or substantial factor in causing decedents' pain and suffering, injuries and death.

80.     The subject injuries and deaths that decedents suffered were not caused or contributed to by any fault or negligence on the part of decedents.

## COUNT THREE: LIABILITY PURSUANT TO N.J.S.A. 2A:62A-21 AS TO DEFENDANTS AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY

81.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

82.     N.J.S.A. 2A:62A-21 states:

> In addition to any other right of action or recovery otherwise available under law, whenever any law enforcement officer, firefighter, or member of a duly incorporated first aid, emergency, ambulance or rescue squad association suffers any injury, disease or death while in the lawful discharge of his official duties and that injury, disease or death is directly or indirectly the result of the neglect, willful omission, or willful or culpable conduct of any person or entity, other than that law enforcement officer, firefighter or first aid, emergency, ambulance or rescue squad member's employer or co-employee, the law enforcement officer, firefighter, or

first aid, emergency, ambulance or rescue squad member suffering that injury or disease, or, in the case of death, a representative of that law enforcement officer, firefighter or first aid, emergency, ambulance or rescue squad member's estate, may seek recovery and damages from the person or entity whose neglect, willful omission, or willful or culpable conduct resulted in that injury, disease or death.

83. At all times relevant, Decedents, as active firefighters with the City of Newark Fire Department, were attempting to suppress the fire on board the Vessel at and around the time that they suffered personal injuries and ultimately death.

84. At the time of their personal injuries and death, decedents were following official orders from the City of Newark Fire Department to suppress the fire on board the Vessel.

85. At all times relevant, decedent's injuries and death took place during the lawful discharge of their official duties with the City of Newark Fire Department.

86. At all times relevant, the defendants AMS, PORTS AMERICA, INC., PNCT and THE PORT AUTHORITY, breached their aforementioned duties and/or were negligent, careless and reckless in the ownership, operation, maintenance and control of the subject port, the cargo, the pusher vehicle, and all other vehicles and/or equipment being used to load cargo aboard the Vessel *inter alia*, in negligently starting and/or causing the fire; in failing to maintain the pusher vehicle in safe condition; in failing to properly service the pusher vehicle; in using improper vehicles and/or equipment to load cargo aboard the Vessel; in negligently maneuvering and/or pushing the cargo onto the Vessel so as to cause the fire; in failing to take the pusher vehicle out of service; in negligently using the pusher vehicle to push cargo onto the Vessel despite known mechanical issues; in negligently modifying the pusher vehicle; in failing to correct a dangerous and defective condition within the pusher vehicle; in negligently allowing and causing the pusher vehicle to overheat and start a fire; in failing to use the appropriate type of vehicle and/or equipment to push the cargo aboard the Vessel; in failing to suppress and/or fight the fire; in failing

36

to alert the Vessel's crew of the fire in a timely manner; in failing to notify the local fire department of the subject fire in a timely manner; in failing to properly supervise and control the subject port; in otherwise being negligent in causing and contributing to the fire and the spread of the fire.

87.     At all times relevant, the defendants AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY, were on actual and/or constructive notice of the dangerous and defective condition(s) that caused the subject fire and the injuries and deaths sustained by decedents.

88.     At all times relevant, the defendants AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY, caused and created the dangerous and defective condition(s) that caused the subject fire and the injuries and deaths sustained by decedents.

89.     The aforementioned negligence was a direct, indirect, proximate cause and/or substantial factor in causing decedents' pain and suffering, injuries and death.

90.     As a result of the aforesaid negligence of defendants AMS, PORTS AMERICA, INC., PNCT, and THE PORT AUTHORITY, decedents sustained serious and permanent personal injuries, including scarring, disfigurement, pain and suffering, suffocation, and death.

91.     The subject injuries and deaths that decedents suffered were not caused or contributed to by any fault or negligence on the part of decedents.

### COUNT FOUR: PER QUOD

92.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

93.     On July 5, 2023, by reason of the foregoing, claimant MICHELE BROOKS suffered a loss of the services and consortium of her spouse, WAYNE BROOKS JR., and was forced to incur hospital, medical and other bills, all as a result of the aforementioned negligence, carelessness, recklessness of the defendants, as is more thoroughly set forth in the above counts.

## COUNT FIVE: WRONGFUL DEATH AS TO ALL DEFENDANTS PURSUANT TO GENERAL MARITIME LAW

94.     Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

95.     Decedent, AUGUSTO ACABOU, died on July 5, 2023, as a direct, indirect and/or proximate cause of the negligence, carelessness, recklessness of Defendants, as is more thoroughly set forth in the above counts.

96.     Decedent, AUGUSTO ACABOU, left surviving his heirs at law all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

97.     Decedent, WAYNE BROOKS, died on July 5, 2023, as a direct, indirect and/or proximate cause of the negligence, carelessness, recklessness of Defendants as is more thoroughly set forth in the above counts.

98.     Decedent, WAYNE BROOKS, left surviving his heirs at law, including but not limited to his spouse, MICHELE BROOKS, and his children, all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

99.     This action and count are brought to recover damages for decedents' wrongful death pursuant to general maritime law.

## COUNT SIX: WRONGFUL DEATH AS TO ALL DEFENDANTS PURSUANT TO NEW JERSEY STATE LAW

100.    Claimants repeat and reallege each and every allegation stated in the above paragraphs with the same force and effect as if set forth in their entirety.

101.    Decedent, AUGUSTO ACABOU, died on July 5, 2023, as a result of the negligence, carelessness and recklessness, of the defendants, as is more thoroughly set forth above.

102.    Decedent, AUGUSTO ACABOU, left surviving his heirs at law all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

103.    Decedent, WAYNE BROOKS, died on July 5, 2023, as a result of the negligence, carelessness and recklessness, of the defendants, as is more thoroughly set forth above.

104.    Decedent, WAYNE BROOKS, left surviving his heirs at law, including but not limited to his spouse, MICHELE BROOKS, and his children, all of whom have sustained pecuniary and economic damages and other damages as a result of his death.

105.    This action is brought to recover damages for decedents' wrongful death pursuant to general maritime law and/or N.J.S.A. 2A:31-1, et. seq., and has been commenced within two (2) years of the date of decedents' death.

**WHEREFORE**, Claimants demand judgment against all defendants, for damages, jointly, severally and/or jointly and severally, on all counts, in the amount of fifty million ($50,000,000.00) and 00/100 dollars with interest and costs of suit and other such relief the Court deems necessary and proper.

## JURY DEMAND

Claimants hereby demand a trial by jury on all the issues involved herein.

SULLIVAN, PAPAIN, BLOCK,
McMANUS, COFFINAS & CANNAVO
*Attorneys for Claimants/Respondents/Cross-Claimants*

By:      _____
         Mark A. Apostoles

DATED: April 4, 2024