**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF GRIMALDI DEEP SEA S.P.A., AS OWNER/OPERATOR OF *M/V GRANDE COSTA D'AVORIO*, FOR EXONERATION FROM OR LIMITATION OF LIABILITY, | Civil Action No. 2:23-CV-20340-JXN-JBC |
| Plaintiff, | Honorable Julien Xavier Neals |
| vs. | (Electronically Filed Document) |
| MARIA ACABOU, individually and as Administrator of the Estate of AUGUSTO ACABOU, deceased and MICHELE BROOKS, individually and as Administrator of the Estate of WAYNE BROOKS JR., deceased, | |
| Respondents/Claimants/Third-Party Plaintiffs, | |
| vs. | |
| AMERICAN MARITIME SERVICES OF NEW YORK, INC., PORTS AMERICA, INC., PORT NEWARK CONTAINER TERMINAL LLC, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, THE CITY OF NEWARK, and THE CITY OF NEWARK FIRE DEPARTMENT, | |
| Claimants/Third-Party Defendants/Third-Party Plaintiffs. | |

**DEFENDANT PORT AUTHORITY OF NEW YORK AND NEW JERSEY'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

**SILLS CUMMIS & GROSS P.C.**
Jeffrey J. Greenbaum
Beth S. Rose
One Riverfront Plaza
Newark, New Jersey 07102-5400
t: (973) 643-7000
f: (973)643-6500
jgreenbaum@sillscummis.com
brose@sillscummis.com

**SQUIRE PATTON BOGGS (US) LLP**
Mark Sheridan
382 Springfield Avenue
Summit, New Jersey 07901
t:  (973) 848-5681
f:  (973) 848-5601
mark.sheridan@squirepb.com

Attorneys for Claimant/Third-Party
Defendant/Third-Party Plaintiff
THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 4

    I.     PANYNJ Exercised No Control Over And Was Not Involved In Grimaldi's Cargo Operations At The Port ................................................................................. 4

    II.    Grimaldi, Ports America, And AMS Were Responsible For The Cargo Operations That Caused The Fire ............................................................................ 5

    III.   The claims asserted against PANYNJ are premised on the flawed presumption that PANYNJ allegedly had a duty: (i) to ensure that Grimaldi conducted its own cargo operations safely; and (ii) to fight fires onboard vessels at the Port and/or provide training to local firefighters. ............................ 7

LEGAL ARGUMENT ............................................................................................................... 9

    I.     Standard For Judgment On The Pleadings Under Rule 12(c)................................. 9

    II.    The Court Should Dismiss All Claims Against PANYNJ Because They Are Based On Purported Duties That PANYNJ Did Not Have.................................. 10

        a.    Under New Jersey law, PANYNJ does not have a duty to ensure the safety of Grimaldi's cargo operations ....................................................... 10

        b.    PANYNJ was not responsible for fighting fires at the Port or training firefighters ........................................................................................ 13

CONCLUSION.......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bankers Trust Co. v. Bethlehem Steel Corp.*,
    761 F.2d 943 (3d Cir. 1985)......................................................................................1

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)...................................................................................2

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
    935 F.3d 187 (3d Cir. 2019)..................................................................................2, 9

*McBride v. Port Authority of New York and New Jersey*,
    295 N.J. Super. 521 (App. Div. 1996) ..............................................................3, 10, 11

*Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*,
    955 F. Supp. 2d 317 (D.N.J. 2013) ...........................................................................8

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)......................................................................................9

*Riccio v. Sentry Credit, Inc.*,
    954 F.3d 582 (3d Cir. 2020)......................................................................................9

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008)......................................................................................9

*Botts v. Lafayette Campbell, LLC*,
    2018 N.J. Super. Unpub. LEXIS 1078 (App. Div. May 9, 2018)...........................10

*Shields v. Ramslee Motors*,
    240 N.J. 479 (2020) ..........................................................................................10, 11

*Darrah v. Evesham Twp.*,
    111 N.J. Super. 62 (App. Div. 1970) ......................................................................12

**Statutes & Regulations**

Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*..........................1, 6

Newark Department of Public Safety § 2:22-4.2(a). ..............................................3, 12

N.J.S.A. § 32:1-4...........................................................................................................3, 4

## TABLE OF AUTHORITIES
### (continued)

**Page**

N.J.S.A. § 2A:62A-21 ...............................................................................................6, 7, 13

N.J.S.A. § 2A:53A-1 *et seq*.................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 12(c) ....................................................................................................1, 2, 3, 8

International Convention for the Safety of Life at Sea, 32 U.S.T. 47 ...........................................8

## PRELIMINARY STATEMENT[1]

The Port Authority of New York and New Jersey ("PANYNJ") brings this motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) because the law is clear that a party owning land, which it lets and does not exercise control over, is not liable for claims arising out of operations on the let property. At its ports, PANYNJ has a longstanding practice of providing space for cargo operations done at the discretion of a shipowner. The term for providing the space can vary from a single day to decades, depending upon the shipowner's needs and the agreed upon arrangement. In each case, PANYNJ is clear that all loading and unloading is done at the risk of the shipowner. In fact, PANYNJ's standard rules and regulations embodied in the Tariff (the "Tariff," Ex. A)[2] specifically state that berth assignment permits for the use of a berth shall include the right to dock and moor watercraft "owned or operated by the permittee or by the company or companies of which the cargo, supplies and passengers are under their care, custody, and control, and to use a portion of the cargo facilities in connection therewith." Ex. A, Tariff at 32, Subrule 34-355.

Grimaldi Deep Sea S.p.A. ("Grimaldi") operates under this arrangement and consequently engages experts for loading and unloading cargo operations, each of whom are required to complete their duties with a degree of care and in compliance with law. PANYNJ does not help Grimaldi, is not involved with or aware of the details of how the parties perform those activities, and is solely focused, for this purpose, on providing space that can be used by others for an agreed

---

[1] All citations to exhibits in this Brief ("Ex. __") are attached to the March 23, 2026 Declaration of Jeffrey J. Greenbaum, Esq. submitted along with this Motion.

[2] The Tariff is a document "integral to [and] explicitly relied upon in" the claims in this action and is therefore appropriately considered by the Court in this motion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Tariff, which is on file with the Federal Maritime Commission, sets forth the terms, conditions, and fees applicable to all entities that utilize public berths at Port Authority Marine Terminals, and is available at https://www.panynj.gov/content/dam/port/Tariff%202023%20Final%20Draft__12.1.2022.pdf.

upon fee. Indeed, Grimaldi even arranges with a marine salvage company to assist if things go wrong.

This case arises out of a fire (the "Fire") that broke out aboard the *M/V Grande Costa D'Avorio* (the "Vessel") during cargo operations while the Vessel was berthed at Port Newark in Newark, New Jersey ("Port Newark" or the "Port"). The Fire resulted in the deaths of City of Newark firefighters Augusto Acabou and Wayne Brooks, Jr. (the "Decedent Firefighters"), and caused extensive damage to the Vessel.

Grimaldi, the owner of the Vessel, initiated a limitation action[3] pursuant to the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., (the "Limitation Action"), seeking to limit its liability in connection with the Fire to the value of the Vessel. In the Limitation Action, Grimaldi asserted claims against Ports America, Inc. ("Ports America") (the stevedore[4] that Grimaldi hired to conduct cargo operations), American Maritime Services of New York, Inc. ("AMS") (the lashers[5] that Ports America subcontracted for cargo operations), the City of Newark (which deployed firefighters to fight the Fire), and PANYNJ, for the damage to its Vessel.

The Estates of the Decedent Firefighters (the "Firefighters' Estates") asserted claims against Grimaldi and filed a Third-Party Complaint in the Limitation Action against Ports America, AMS, the City of Newark, and PANYNJ seeking damages resulting from the deaths of the Firefighters. In addition, Grimaldi asserted claims against Ports America, AMS, the City of

---

[3] The purpose of a limitation action is to limit the liability of a shipowner to the value of the vessel and its cargo, along with a supplemental limitation for personal injury and death claims. Once the limitation action is filed, all entities/individuals with related claims are required to assert their claims in the limitation action and may challenge the requested limitation of liability based on, *inter alia*, the shipowner's negligence. *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 948 n.14 (3d Cir. 1985).

[4] A stevedore is responsible for loading and unloading vessels at a marine terminal.

[5] A lasher is responsible for securing cargo to the deck of a vessel.

Newark, and PANYNJ for damage to its Vessel; PANYNJ asserted claims against Grimaldi, Ports America, and AMS for damage to the Port; and Grimaldi, Ports America, AMS, and PANYNJ asserted claims for contribution/indemnification against each other.

As discussed in further detail below, the claims asserted against PANYNJ are premised on the flawed presumption that PANYNJ allegedly had a duty: (i) to ensure that Grimaldi conducted its own cargo operations at the Port in a safe manner; and (ii) to fight fires onboard vessels at the Port and/or provide training to local firefighters. As confirmed by the governing agreements between the parties, PANYNJ was not involved in Grimaldi's cargo operations, nor was PANYNJ contractually or legally responsible for firefighting or firefighting training. Based on the unambiguous terms of the Tariff and the lease between PANYNJ and the City of Newark (the "Lease," Ex. B),[6] which Grimaldi references in its claims against PANYNJ, and the applicable municipal firefighting regulation, no such duty exists as a matter of law.

Pursuant to the Tariff, Grimaldi had exclusive control over cargo operations and PANYNJ had none. PANYNJ did not select the stevedores or the lashers, nor did PANYNJ have involvement in planning or implementing the cargo operations at issue. PANYNJ similarly had no involvement with the crew of the Vessel, nor did it have responsibility for salvage operations or determinations related thereto. This is analogous to the situation arising from the circumstances in *McBride v. Port Authority of New York and New Jersey*, where the Court held that PANYNJ was a landlord and had given away the rights to control the operations on the premises by way of a property lease. 295 N.J. Super. 521 (App. Div. 1996). In this case, the berth application, which incorporates the

---

[6] The Lease between PANYNJ and the City of Newark is a matter of public record and is cited in Grimaldi's pleading against PANYNJ (*see* ECF No. 113 ¶ 27). Accordingly, it is properly before this Court pursuant to Fed. R. Civ. P. 12(c). *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (stating that matters of public record may be considered by a court under Rule 12(c)).

terms of the Tariff, takes the place of the lease insofar as it provides that if an entity has rented the berth, PANYNJ does not intervene with the use of the facility so long as it is in compliance with the conditions set forth in the Tariff.

Pursuant to Newark Department of Public Safety § 2:22-4.2(a), the City of Newark Fire Department has exclusive jurisdiction over firefighting at the Port. Accordingly, PANYNJ had no obligation to train local firefighters responding to fires on vessels at the Port and is explicitly prohibited from fighting such fires itself. This is further reflected in the Lease, which provides that PANYNJ is not responsible to provide fire protection at the Port.

PANYNJ respectfully requests that the Court grant its motion for judgment on the pleadings pursuant to Rule 12(c) and dismiss all claims against PANYNJ in this action in their entirety with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      PANYNJ Exercised No Control Over And Was Not Involved In Grimaldi's Cargo Operations At The Port

PANYNJ is a municipal corporate instrumentality and political subdivision of the States of New York and New Jersey, created and existing by virtue of the Compact of April 30, 1921, made by and between the two states, and thereafter consented to by the United States Congress. *See* N.J.S.A. § 32:1-4. PANYNJ acts as a landlord port authority for entities that request use of the ports it operates, including Port Newark. Port Newark is owned by the City of Newark. PANYNJ leases Port Newark from the City of Newark pursuant to a written Lease, and thus operates Port Newark as a lessee. Ex. B, Lease. Through berth applications to the Port, which expressly incorporate the terms of the Tariff, PANYNJ grants permittees permission to use specified berths

-4-

for the duration covered by such applications,[7] conditioned upon compliance with the terms of the Tariff. Ex. A, Tariff.

PANYNJ operates several public berths at Port Newark, which are used by vessels docked at the Port as they load and unload cargo. PANYNJ is not involved in loading and unloading operations and permittees maintain exclusive control over such operations. *See, e.g.*, Ex. A, Tariff at 37, Subrule 34-440 (providing that permittees, at their own cost and expense, shall provide all equipment and personnel necessary to conduct cargo operations); *id.* at 15, Subrule 34-100 (providing that permittees may retain an independent contractor to load the POVs as long as the contractor is authorized by law to perform such work); *id.* at 32, Subrule 34-355 (providing that the cargo, supplies and passengers of permittees remain under the permittee's care, custody, and control). Pursuant to the Tariff, PANYNJ explicitly "assumes no responsibility for the performance" of stevedoring work and the handling of cargo. *Id.* at 18, Subrule 34-150 (emphasis added). Accordingly, PANYNJ did not conduct and was not in any way involved in the cargo operations at issue, which were in the exclusive control of Grimaldi. *Id.*

## II.    Grimaldi, Ports America, And AMS Were Responsible For The Cargo Operations That Caused The Fire

On June 23, 2023, Grimaldi submitted an electronic berth application (the "Berth Application") to PANYNJ to request the use of Port Newark Berth 18 ("Berth 18") from July 5 to July 6, 2023, so that Grimaldi could load approximately 1,200 previously owned vehicles ("POVs") onto its Vessel. *See* ECF No. 113 ("Grimaldi's Counterclaims") ¶¶ 9, 13; ECF No. 64 ("AMS's Crossclaims") ¶¶ 11, 13; ECF No. 92 ("Ports America's Crossclaims") ¶ 24. As the

---

[7] A berth is a designated space within a port or harbor where a vessel or ship docks to load and unload cargo or passengers. A berth may be occupied by only one ship or vessel at a time. Accordingly, when PANYNJ approves an application to berth at Port Newark, the permittee is granted exclusive possession of the subject berth for the duration of the period covered by the application.

occupant of Berth 18 pursuant to the Berth Application, Grimaldi had exclusive possession of the berth for the duration of the application period. Grimaldi's Berth Application expressly incorporated the terms of the Tariff. *See* ECF No. 113 ¶¶ 9, 11. To conduct its cargo operations at Port Newark, Grimaldi hired Ports America as the stevedore. Ports America subcontracted with AMS to provide the lashers for the Vessel's loading operation. *See* ECF No. 113 ¶ 10; ECF No. 64 ¶¶ 11-12, 14; ECF No. 92 ¶¶ 12, 25-26.

On July 5, 2023, a Fire broke out aboard the Vessel as AMS was loading it with POV cargo while the Vessel was berthed at Port Newark. *See* ECF No. 113 ¶¶ 9, 13-14, 18; ECF No. 64 ¶¶ 11, 14; ECF No. 23 (the Firefighters' Estates' "Third-Party Complaint") ¶¶ 24-25, 37; ECF No. 92 ¶¶ 25, 32, 37. The Fire began when a 2008 Jeep Wrangler (the "Wrangler"), which was owned by Ports America and used to push non-running POVs into the Vessel's cargo hold, leaked transmission fluid, which caught fire and quickly spread to the surrounding POV cargo on the Vessel. *See* ECF No. 113 ¶¶ 13-19; ECF No. 64 ¶¶ 14-16; ECF No. 23 ¶¶ 30-31, 40, 42-43; ECF No. 92 ¶¶ 37, 40. AMS lashers were unable to contain the spread of the Fire with the available extinguishers, and Grimaldi's crew was unable to extinguish it because their deployment of the Vessel's CO2 fire-suppression system was ineffective. *See* ECF No. 113 ¶¶ 20-23; ECF No. 64 ¶¶ 17-19. The City of Newark Fire Department deployed several firefighters to the Vessel to fight the Fire, including the Decedent Firefighters. *See* ECF No. 113 ¶ 24; ECF No. 64 ¶¶ 20, 22; ECF No. 23 ¶¶ 32-35; ECF No. 92 ¶ 32. While on the Vessel, the Decedent Firefighters became disoriented and perished in the Fire, which also caused extensive damage to the Vessel. *See* ECF No. 113 ¶ 54; ECF No. 64 ¶ 22; ECF No. 23 ¶ 35.

      **III.**      **The claims asserted against PANYNJ are premised on the flawed presumption that PANYNJ allegedly had a duty: (i) to ensure that Grimaldi conducted its own cargo operations safely; and (ii) to fight fires onboard vessels at the Port and/or provide training to local firefighters.**

On September 13, 2023, Grimaldi initiated the instant action by filing a Complaint for Exoneration From or Limitation of Liability (the "Limitation Complaint") pursuant to the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq*., in the United States District Court for the District of New Jersey. ECF No. 1. In the Limitation Complaint, Grimaldi alleges that its liability should be limited to $15,900,000, which represents the value of the Vessel and pending freight, with a supplemental limitation for personal injury and death claims in the amount of $19,837,440.

On April 4, 2024, the Firefighters' Estates answered the Limitation Complaint, asserted various claims against Grimaldi, and brought a Third-Party Complaint against AMS, Ports America, Port Newark Container Terminal LLC ("PNCT"),[8] PANYNJ, and the City of Newark. ECF No. 23. In the Third-Party Complaint, the Firefighters' Estates assert claims for negligence, liability under N.J.S.A. § 2A:62A-21 (which provides a cause of action to firefighters injured in the line of duty), loss of consortium (for Decedent Brooks only), wrongful death under general maritime law, and wrongful death under New Jersey tort law.

On April 26, 2024, PANYNJ answered the Limitation Complaint and filed claims against Grimaldi for negligence under general maritime law, breach of contract under the Tariff, contribution, and indemnity.[9] ECF No. 32. In response, Grimaldi filed counterclaims against

---

[8] PNCT leases areas within the Port.

[9] PANYNJ also asserted crossclaims for breach of contract, contractual indemnification, common law indemnification, common law contribution, and equitable subrogation against AMS, Ports America, and PNCT. ECF Nos. 32, 146. In addition, PANYNJ filed a third-party complaint against FAPS Inc., an entity that contracted with Grimaldi in connection with the cargo operations at issue, asserting claims for breach of contract, common law indemnification, common law contribution, and equitable subrogation. ECF No. 33.

PANYNJ, seeking contribution and indemnification with respect to the Firefighters' Estates' claims, and damages related to the Vessel. ECF No. 113. Specifically, Grimaldi asserted claims for breach of the implied warranty of workmanlike service, breach of contract (the Tariff), and negligence. ECF No. 113.[10]

In addition, AMS and Ports America filed crossclaims against PANYNJ seeking contribution and indemnification for the claims asserted against them in the Limitation Complaint.[11] ECF Nos. 64, 73, 87, 92.

In sum, the following claims have been asserted against PANYNJ:

(1) The Firefighters' Estates' Third-Party Complaint (ECF No. 23):

- Negligence (Count I ¶¶ 69-76);
- Liability pursuant to N.J.S.A. 2A:62A-21 (Count III ¶¶ 86-97);
- Per quod (Count IV ¶¶ 98-99);
- Wrongful death pursuant to general maritime law (Count V ¶¶100-05); and
- Wrongful death pursuant to New Jersey state law (Count VI ¶¶ 106-11).

(2) Grimaldi's Counterclaims (ECF No. 113):

- Breach of the implied warranty of workmanlike service under maritime law (First Cause of Action ¶¶ 69-75);
- Breach of contract (Second Cause of Action ¶¶ 76-81);
- Negligence under general maritime law (Third Cause of Action ¶¶ 82-86); and
- Indemnity and contribution under general maritime law (Fourth Cause of Action ¶¶ 87-89).

(3) AMS Counterclaims (ECF Nos. 64, 73, 87):

- Contractual and/or common law indemnity and/or contribution (ECF No. 64 ¶¶ 29-33; ECF No. 73 ¶ 126; ECF No. 87 ¶ 53); and

(4) Ports America's Crossclaims (ECF No. 92):

- Contribution pursuant to N.J.S.A. 2A:53A-1 *et seq.* (First Crossclaim ¶ 126);
- Common law indemnification (Second Crossclaim ¶ 127);
- Contractual indemnification (Third Crossclaim ¶ 133).

---

[10] Grimaldi also asserted claims against Ports America, AMS, and the City of Newark.
[11] Ports America and AMS also asserted claims against Grimaldi and the City of Newark.

These claims against PANYNJ are all based on its alleged failure to: (i) ensure that Grimaldi's cargo operations were conducted safely at the Port so as to prevent the Fire from starting[12]; and (ii) adequately fight the Fire and/or ensure that properly trained firefighters were deployed to fight the Fire. ECF No. 23 at ¶¶ 70-71, 91-94, 98-99, 100-03, 106-09; ECF No. 133 at ¶¶ 32-53, 72-74, 79, 84; ECF No. 64 ¶¶ 29-30; ECF No. 92 ¶¶ 127, 133.

Because PANYNJ had no duty to ensure the safety of Grimaldi's cargo operations at the Port, which operations were in the exclusive control of Grimaldi, or to fight vessel fires and/or provide training to firefighters, which is within the exclusive jurisdiction of the City of Newark, the Court should grant its motion for judgment on the pleadings pursuant to Rule 12(c) and dismiss all claims against PANYNJ in this action in their entirety with prejudice.

## LEGAL ARGUMENT

### I.     Standard For Judgment On The Pleadings Under Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *See* Fed. R. Civ. P. 12(c). "The pleadings are considered to be 'closed' after the complaint and answer have been filed, along with any reply to additional claims asserted in the answer." *Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 323 (D.N.J. 2013). To succeed under Rule 12(c), the movant must "clearly establish[] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). In deciding a motion for judgment

---

[12] Grimaldi is subject to the International Convention for the Safety of Life at Sea ("SOLAS"), Nov. 1, 1974, 32 U.S.T. 47. Pursuant to SOLAS Chapter II-2, Grimaldi has the primary responsibility to prevent fires and fight fires on its vessels. These obligations include reducing risks to life, minimizing damage to the ship, and ensuring containment and suppression of the fire at the source. *Id*.

-9-

on the pleadings, the court considers "the complaint, exhibits attached to the complaint, matters of public record," and documents "integral to or explicitly relied upon in the complaint." *Wolfington*, 935 F.3d at 195 (citations omitted).

A motion for judgment on the pleadings "is reviewed under the same standards applicable to a motion to dismiss made under Rule 12(b)(6)." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020). Accordingly, the Court's role is to "determine whether the plaintiff is 'plausibly' entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

**II.     The Court Should Dismiss All Claims Against PANYNJ Because They Are Based On Purported Duties That PANYNJ Did Not Have**

The claims asserted against PANYNJ in this case are premised on the theory that PANYNJ is responsible for the Fire and the resulting deaths of the Decedent Firefighters and damage to the Vessel because PANYNJ failed to ensure that Grimaldi conducted cargo operations in a safe manner and failed to adequately fight the Fire and/or ensure that fires onboard vessels at the Port would be handled properly. *See*, *e.g.*, ECF No. 23 ¶¶ 28-31, 48-51, 65-68, 70-75, 91-95, 98-99, 101, 107; ECF No. 113 ¶¶ 15, 18, 28-53, 58, 73-74, 79-80, 83-85, 88. As discussed below, the Court should dismiss these claims with prejudice, because PANYNJ did not have a duty to ensure the safety of Grimaldi's cargo operations, over which Grimaldi exercised exclusive control, to fight fires at the Port, over which the City of Newark has exclusive jurisdiction, or to ensure the adequacy of training received by local firefighters responding to fires aboard vessels at the Port.

**a.     Under New Jersey law, PANYNJ does not have a duty to ensure the safety of Grimaldi's cargo operations**

As a landlord port authority with no involvement in or control over Grimaldi's cargo operations, PANYNJ is similar to an out-of-possession landlord with respect to those operations. Under New Jersey law, PANYNJ is not responsible for personal injuries or property damage arising from the cargo operations of permittees (such as Grimaldi, Ports America, and AMS),

because the contract governing cargo operations, the Tariff, places full responsibility for such operations solely on those permittees.

Under the leading case of *McBride v. Port Authority of New York and New Jersey*, 295 N.J. Super. 521 (App. Div. 1996), a commercial landlord is not responsible for maintaining leased premises unless such an obligation is specified in the lease between the landlord and the tenant. *McBride*, 295 N.J. Super. at 526-527. *See also Shields v. Ramslee Motors*, 240 N.J. 479, 489 (2020) (discussing *McBride* approvingly). In *McBride*, the plaintiff, an employee of PANYNJ's tenant, sustained injuries "when the vehicle he was operating on his employer's loading dock at the leased premises struck a hole which caused the vehicle to jerk, throwing him to the ground and seriously fracturing his heel." *Id.* at 524. The plaintiff argued that PANYNJ bore liability for the injury because it had the right to enter the leased premises to make repairs. The Court rejected plaintiff's argument because a commercial landlord is generally not responsible for maintaining leased premises, and there was nothing in the lease between PANYNJ and the tenant imposing such a requirement on PANYNJ. *Id.* at 526-527. *See also Botts v. Lafayette Campbell, LLC*, 2018 N.J. Super. Unpub. LEXIS 1078 (App. Div. May 9, 2018) (applying *McBride* to case involving tenant-owned equipment that caused injury and finding no liability on the part of the landlord where the landlord did not own the subject equipment and was not involved in the operations on the premises, nor engaged in the use of the subject equipment). Accordingly, under New Jersey law, PANYNJ does not owe a duty to ensure the safety of Grimaldi's cargo operations unless it has made an explicit covenant to do so.

Here, Grimaldi, Ports America and AMS conducted cargo operations at Port Newark as tenants of PANYNJ pursuant to the terms of the Tariff. The Tariff, which governs PANYNJ

-11-

tenants' use of the premises, does not contain any covenants by PANYNJ and does not impose any obligation on PANYNJ regarding cargo operations. To the contrary, it provides that:

> All stevedoring work, and the handling of cargo to and from a terminal, must be performed in a manner and with equipment satisfactory to the Port Authority from a safety standpoint, but the **Port Authority assumes no responsibility for the performance of such work**. (Tariff, Subrule 34-150: Cargo Handling) (emphasis added).

Pursuant to the Tariff, only PANYNJ's tenants, not PANYNJ, are responsible to ensure that all stevedoring work, including all cargo handling (such as operating the Wrangler), is performed in a safe manner, using safe equipment. Although the Tariff also gives PANYNJ the *right* to inspect the work and equipment, it does not require PANYNJ to do so.  Most importantly, and in no uncertain terms, the Tariff specifies that PANYNJ "assumes no responsibility for the performance of such work." Tariff, Subrule 34-150. *See McBride*, 295 N.J. Super. at 527 (finding no duty owed by PANYNJ where applicable agreement reserved PANYNJ's right to make certain repairs "but contain[ed] no covenant by [PANYNJ] to do so," and explicitly disclaimed responsibility by PANYNJ to make such repairs); *Shields*, 240 N.J. at 489 (finding no duty owed by commercial landlord where lease specifically stated that "the right to enter did not create 'an obligation on the part of the Landlord[.]'").

And pursuant to the Tariff, only Grimaldi, Ports America, and AMS were required to ensure the safety of their cargo operations at Port Newark. Not only does the Tariff not include an explicit covenant that PANYNJ will ensure the safety of Grimaldi's cargo operations, but it also explicitly disclaims any responsibility of PANYNJ with respect to cargo handling. Accordingly, under *McBride*, PANYNJ owed no duty to ensure Grimaldi conducted its own cargo operations in a safe manner (as required by law and contract).

-12-

**b.  PANYNJ was not responsible for fighting fires at the Port or training firefighters**

PANYNJ is not a marine firefighting agency and has no legal duty or expertise to train local municipalities' fire departments or personnel at the Port (such as PAPD officers) on how to respond to a vessel fire.

Pursuant to Municipal Regulation, a matter of public record, the City of Newark is exclusively responsible for firefighting at Port Newark:

> The Division of Fire **shall have exclusive jurisdiction** over the control, fighting and extinguishment of any conflagration which occurs within the City limits. The Division shall: [p]rovide firefighting service for the extinguishment of fires and the necessary and incidental protection of life and property in connection therewith throughout the City and upon vessels in any waters within or adjacent to the City or upon any dock, wharf, pier, warehouse or other structure bordering upon or adjacent to such waters.

Newark Department of Public Safety § 2:22-4.2(a) (emphasis added). Indeed, by the terms of the Regulation, PANYNJ is prohibited from doing so in view of the City of Newark's exclusive jurisdiction. *See Darrah v. Evesham Twp.*, 111 N.J. Super. 62, 66 (App. Div. 1970) (holding that, where powers granted to an authority by statute are exclusive, such authority has "the exclusive right to deal with the pertinent subject matter to the exclusion of any other body, public, governmental or otherwise.").

Additionally, pursuant to the clear terms of the Lease between the City of Newark and PANYNJ, which is a matter of public record and is cited in Grimaldi's Counterclaims against PANYNJ (*see* ECF No. 133 at ¶ 27), PANYNJ relies upon the City of Newark for firefighting at Port Newark. *See* Ex. B, Lease at 19. Specifically, Section 21(B) of the Lease provides, in pertinent part:

> Within the portion of the Newark Marine Terminal, situated within the City limits, **the City shall provide general . . . fire protection . . . .**

Lease, Section 21(B) (emphasis added). There are no provisions in the Lease or any of the Supplemental Agreements that impose any firefighting responsibility on PANYNJ.[13]

Accordingly, the Court should grant PANYNJ's motion for judgment on the pleadings and dismiss all claims against PANYNJ with prejudice because it did not have a duty to ensure the safety of cargo operations, to fight fires at the Port, or to ensure the adequacy of the training received by local firefighters responding to fires at the Port. All claims asserted against PANYNJ, which include Grimaldi's claims for negligence, breach of implied warranty, and breach of contract, the Firefighters' Estates' claims for negligence, liability pursuant to N.J.S.A. 2A:62A-21, *per quod*, and wrongful death, and the indemnification/contribution claims of Grimaldi, AMS, and Ports America, fail because they all are premised on the flawed theory that PANYNJ owed duties that are legally allocated to other parties to this action under law and contract.

## CONCLUSION

Based on all of the foregoing reasons, all claims asserted against PANYNJ should be dismissed in their entirety with prejudice.

Dated:  March 23, 2026

By:    /s/ *Jeffrey J. Greenbaum*

Jeffrey J. Greenbaum
Beth S. Rose
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500
jgreenbaum@sillscummis.com
brose@sillscummis.com

---

[13] Since execution of the Lease, which was entered into in 1947, there have been twenty-one agreements amending/supplementing the Lease (the "Supplemental Agreements"), none of which modify the City's firefighting responsibility at the Port.

-14-

SQUIRE PATTON BOGGS (US) LLP
Mark Sheridan
382 Springfield Avenue
Summit, New Jersey 07901
t:  (973) 848-5681
f:  (973) 848-5601
mark.sheridan@squirepb.com

Attorneys for Claimant/Third-Party
Defendant/Third-Party Plaintiff
THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY

-15-