**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT<br><br>OF GRIMALDI DEEP SEA S.P.A., AS OWNER/OPERATOR OF *M/V GRANDE COSTA D'AVORIO*, FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br>  Plaintiff,<br><br>  vs.<br><br>MARIA ACABOU, individually and as Administrator of the Estate of AUGUSTO ACABOU, deceased and MICHELE BROOKS, individually and as Administrator of the Estate of WAYNE BROOKS JR., deceased,<br><br>  Respondents/Claimants/Third-Party Plaintiffs,<br><br>  vs.<br><br>AMERICAN MARITIME SERVICES OF NEW YORK, INC., PORTS AMERICA, INC., PORT NEWARK CONTAINER TERMINAL LLC, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, THE CITY OF NEWARK, and THE CITY OF NEWARK FIRE DEPARTMENT,<br><br>  Claimants/Third-Party Defendants/Third-Party Plaintiffs. | Civil Action No. 2:23-CV-20340-JXN-JBC<br><br>Honorable Julien Xavier Neals<br>(Electronically Filed Document) |

---

**DEFENDANT THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY'S
RESPONSE TO GRIMALDI'S SUR-REPLY BRIEF**

---

**SILLS CUMMIS & GROSS P.C.**
Jeffrey J. Greenbaum
Beth S. Rose
One Riverfront Plaza
Newark, New Jersey 07102-5400
t: (973) 643-7000
f: (973) 643-6500
jgreenbaum@sillscummis.com
brose@sillscummis.com

**SQUIRE PATTON BOGGS (US) LLP**
Mark Sheridan
382 Springfield Avenue
Summit, New Jersey 07901
t: (973) 848-5681
f: (973) 848-5601
mark.sheridan@squirepb.com

Attorneys for Claimant/Third-Party
Defendant/Third-Party Plaintiff
THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................2

    I.      PANYNJ Had No Duty To Protect Grimaldi From Its Own Negligence................2

          A.      Grimaldi's "plain reading" of the Tariff fails to identify any affirmative obligation on PANYNJ with respect to Grimaldi's own cargo operations ..........................................................................................2

          B.      Subrule 34-001 is not relevant because PANYNJ did not owe a legal duty to ensure the safety of Grimaldi's own cargo operations, and therefore did not act negligently with respect to Grimaldi's cargo operations, which caused the Fire ...............................................................4

          C.      *McBride* is in harmony with maritime law and clearly applies to this dispute ...............................................................................................4

          D.      *McBride*, not *Golden Touch*, applies here because Grimaldi had exclusive possession and control over Berth 18 and its own cargo operations, which caused the fire ................................................................7

    II.     Grimaldi's Arguments About The USCG/NTSB Investigation Do Not Preclude Judgment On The Pleadings Against It .......................................................8

          A.      The stipulation confirms that PANYNJ had no role in cargo operations ....................................................................................................8

          B.      46 U.S.C. § 6308 bars consideration of Peter Montella's USCG investigation testimony ....................................................................8

    III.    Grimaldi's Reference To The Plausibility Standard Does Not Save It From Judgment On The Pleadings ..................................................................................10

CONCLUSION..........................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGF Marine Aviation & Transp. v. Cassin*,
    544 F.3d 255 (3d Cir. 2008)............................................................................................4, 5

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994)...............................................................................................10

*Calhoun v. Yamaha Motor Corp.*,
    40 F.3d 622 (3d Cir. 1994).................................................................................................5

*Clark v. Nat'l Shipping Co. of Saudi Arabia*,
    552 F. Supp. 2d 576 (E.D. Va. 2008) .......................................................................1, 5, 6, 7

*Complaint of Nautilis Motor Tanker Co., Ltd.*,
    85 F.3d 105, 116 (3d Cir. 1996) ........................................................................................6

*Matter of Coeymans Marine Towing, LLC*,
    822 F. Supp. 3d 686 (E.D. Va. 2026) .................................................................................9

*Cox Operating, LLC v. Atina M/V*,
    683 F. Supp. 3d 557 (E.D. La. 2023)..................................................................................9

*In re Eternity Shipping, Ltd.*,
    444 F. Supp. 2d 347 (D. Md. 2006)....................................................................................9

*Kermarec v. Compagnie Generale Transatlantique*,
    358 U.S. 625 (1959)...........................................................................................................5

*Leonard v. Golden Touch Transportation of New York Inc.*,
    144 F. Supp. 3d 640 (D.N.J. 2015) ....................................................................................7

*McBride v. Port Auth. of New York & New Jersey*,
    295 N.J. Super. 521 (App. Div. 1996) ........................................................................ *passim*

*In re Petition of Frescati Shipping Co., Ltd.*,
    718 F.3d 184 (3d Cir. 2013)...............................................................................................6

*Vorchheimer v. Philadelphian Owners Ass'n*,
    903 F.3d 100 (3d Cir. 2018)..............................................................................................11

**Statutes**

46 U.S.C. § 6308....................................................................................................................8, 9

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

46 U.S.C. § 6308(a) ........................................................................................................9

49 U.S.C. § 1154(b) ........................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(c) .....................................................................................................10

Newark Department of Public Safety § 2:22-4.2(a) .....................................................11

## PRELIMINARY STATEMENT[1]

As PANYNJ established in its Moving Brief, by law and contract, and specifically the clear terms of the Tariff, the Lease, and municipal regulations, PANYNJ had no legal duty: (i) to ensure that Grimaldi conducted its own cargo operations safely; or (ii) to fight fires at Port Newark and/or usurp firefighting training from local firefighters. Grimaldi's Sur-Reply, which largely rehashes arguments that Grimaldi already asserted in its Opposition, does nothing to advance Grimaldi's argument that PANYNJ owed a legal duty to protect Grimaldi from its own negligence and to provide firefighting on Grimaldi's own Vessel. Grimaldi's argument attempting to establish the existence of a duty is premised on a fundamental mischaracterization of the unambiguous language in the Tariff, which unequivocally requires Grimaldi (not PANYNJ) to conduct cargo operations safely, and also contains an explicit disclaimer of PANYNJ's liability relating to cargo operations.

Separately, any application of federal maritime law here supports PANYNJ's position. Federal maritime law "does not impose a duty on a terminal operator to oversee stevedoring operations" nor a "duty to inspect equipment it [does] not own." *See Clark v. Nat'l Shipping Co. of Saudi Arabia*, 552 F. Supp. 2d 576, 578 (E.D. Va. 2008) (recognizing that cargo operations fall within the province of the vessel owner and stevedore, and that terminal operators should not be held liable for activities "in which it took no part and over which it asserted no control"). For the reasons set forth below, and in PANYNJ's Moving Brief and Reply Brief, the Court should grant PANYNJ's Motion and dismiss all claims against PANYNJ with prejudice.

---

[1] All citations to exhibits in this Brief ("Ex. __") are attached to the March 23, 2026 Declaration of Jeffrey J. Greenbaum, Esq. Unless defined herein, capitalized terms bear the same meaning ascribed to them in PANYNJ's Moving Brief and Reply Brief.

## ARGUMENT

### I.     PANYNJ Had No Duty To Protect Grimaldi From Its Own Negligence

#### A.     Grimaldi's "plain reading" of the Tariff fails to identify any affirmative obligation on PANYNJ with respect to Grimaldi's own cargo operations

In its Sur-Reply, Grimaldi asserts (as it did in its Opposition) that PANYNJ had a duty to ensure the safety of stevedoring/cargo operations pursuant to Subrule 34-150, which provides:

> All stevedoring work, and the handling of cargo to and from a terminal, must be performed in a manner and with equipment satisfactory to the Port Authority from a safety standpoint, but the Port Authority assumes no responsibility for the performance of such work.

Grimaldi's Sur-Reply Brief at 2.

Grimaldi contends that because all cargo equipment had to be "satisfactory to the Port Authority from a safety standpoint," PANYNJ had "an obligation to ensure itself that its safety requirements are met," and that by not "taking any action," PANYNJ somehow "established" that the Jeep Wrangler was "satisfactory." Grimaldi's Sur-Reply Brief at 3. This self-serving argument stretches the Tariff past its plain language and asserts a duty where one does not exist.

The Tariff contains the rules and regulations that entities using the berths at the Port must follow. Ex. A, Tariff. Subrule 34-150 requires **Grimaldi**, who performed the cargo operations (not PANYNJ, which had no involvement in the cargo operations), to perform the work safely with safe equipment. *Id.* at 18, Subrule 34-150. While the Subrule gives PANYNJ the right to object to the equipment used by stating that it must be "satisfactory to the Port Authority from a safety standpoint," this is a permissive right, not a mandatory duty. *Id.* Nowhere does that Subrule, nor the Tariff more generally, impose an "obligation" on PANYNJ to "evaluate" the work of, or equipment used by, Grimaldi's stevedores, and Grimaldi points to no such language or other

-2-

contractual arrangement stipulating same. Absent a clear covenant by PANYNJ to inspect Grimaldi's (or its contractor's) cargo handling equipment, no duty exists on the part of PANYNJ to do so as a matter of law. *McBride v. Port Auth. of New York & New Jersey*, 295 N.J. Super. 521, 526 (App. Div. 1996) (quoting *Michaels v. Brookchester, Inc*., 26 N.J. 379, 388 (1958)).

If PANYNJ intended to impose such a significant obligation on itself, it would have explicitly said so in the Tariff. But PANYNJ did the opposite by expressly disclaiming any and all liability for stevedoring work/cargo operations. Specifically, Subrule 34-150 provides that "the Port Authority assumes no responsibility" for "stevedoring work, and the handling of cargo to and from a terminal." Ex. A, Tariff at 18, Subrule 34-150. As Grimaldi argues, and PANYNJ wholeheartedly agrees, courts must give effect to the contractual language agreed to by the parties to a contract, and this language is no exception. Grimaldi's Sur-Reply Brief at 3.

Grimaldi contends that the disclaimer language does not apply because Grimaldi's claims do not "attempt to hold PANYNJ liable for the 'performance'" of cargo operations. Grimaldi's Sur-Reply Brief at 2. This argument is difficult to comprehend. Grimaldi asserts that PANYNJ bears responsibility for the Fire, and it is undisputed that Grimaldi's own cargo operations caused the Fire. Accordingly, the language in Subrule 34-150 stating that PANYNJ "assumes no responsibility" for Grimaldi's cargo operations invalidates Grimaldi's claims. Ex. A, Tariff at 18, Subrule 34-150.[2]

---

[2] Grimaldi also makes passing reference to Subrules 34-225 and 34-280. Grimaldi's Sur-Reply Brief at 3. As PANYNJ stated in its Reply Brief, like Subrule 34-150, Subrules 34-225 and 34-280 give PANYNJ the right to inspect equipment, but this reservation does not create a legal duty, and any doubt whether it does is extinguished with the language in Subrule 34-150 stating that PANYNJ "assumes no responsibility." Ex. A, Tariff at 18, Subrule 34-150*; see* PANYNJ's Reply Brief at 5-6.

**B.     Subrule 34-001 is not relevant because PANYNJ did not owe a legal duty to ensure the safety of Grimaldi's own cargo operations, and therefore did not act negligently with respect to Grimaldi's cargo operations, which caused the Fire**

Grimaldi asserts that PANYNJ's Motion fails because Subrule 34-001 does not allow PANYNJ to escape liability for its own negligence. Grimaldi's Sur-Reply Brief at 5. As explained in PANYNJ's Reply Brief, Subrule 34-001 of the Tariff is irrelevant because PANYNJ is not attempting to escape liability for its own negligence; PANYNJ had no duty to ensure the safety of Grimaldi's cargo operations, and without a duty, there can be no negligence. PANYNJ's Reply Brief at 4, n.6. Notably, while attempting to impose a duty on PANYNJ that does not exist, Grimaldi ignores its own duty imposed by law to ensure an adequate response to the Fire that occurred on its own Vessel. *See* PANYNJ's Reply Brief at 8 (citing SOLAS). Grimaldi's attempt to sidestep its own legal obligations is not a minor oversight — it goes to the heart of Grimaldi's misguided attempt to shift blame for its own failures onto PANYNJ. If not for Grimaldi's ineffective fire suppression system onboard the Vessel, *inter alia*, the Fire would have been contained and extinguished. Liability in this case clearly lies with Grimaldi, not PANYNJ.

**C.     *McBride* is in harmony with maritime law and clearly applies to this dispute**

Grimaldi argues that because federal maritime law applies to this dispute, *McBride* is not applicable. Grimaldi's Sur-Reply Brief at 1-2, 4, 6-8. This argument is baseless. As Grimaldi is well aware, state law is the default rule in maritime cases when there is no well-established federal admiralty rule. *See AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 260 n.4 (3d Cir. 2008) (explaining that, where no "well established principles of federal admiralty law" exist to resolve a dispute, the court must "apply state law as the federal rule of decision.") (citations omitted). Stated another way, state law provides the relevant rule of decision in maritime cases

unless it conflicts with federal maritime law. *See id*.; *see also Calhoun v. Yamaha Motor Corp*., 40 F.3d 622, 627 (3d Cir. 1994).[3]

Here, PANYNJ relies on New Jersey property law enunciated in *McBride* to show that, in the absence of specific language in the Tariff imposing a duty, PANYNJ is not responsible to ensure the safety of Grimaldi's cargo operations, and the mere reservation of a right to inspect cargo equipment does not create such an affirmative duty. PANYNJ's Moving Brief at 11-12; PANYNJ's Reply Brief at 3-5. Critically, these same principles have been applied in federal maritime cases—demonstrating that *McBride* and maritime law are in harmony, not in conflict.

For example, in *Clark v. Nat'l Shipping Co. of Saudi Arabia*, 552 F. Supp. 2d 576, 578 (2008), where a plaintiff alleging a maritime negligence claim attempted to "thrust a legal duty upon" a terminal operator, the Court looked to the tariff and found no duty even where the tariff reserved the terminal operator's right to "control and perform the loading, unloading, handling, recoopering, reconditioning, fumigating, weighing and sampling of all freight and cargo on [its] premises and facilities." *See id*. at 578 (citing *Goldsmith v. SWAN REEFER A.S*., 173 F. App'x 983, 989 (3d Cir. 2006)). The Court held that "the mere ability to control is not a sufficient basis for maritime negligence liability," and dismissed the terminal operator from the case because maritime law "does not impose a duty on a terminal operator to oversee stevedoring operations." *Id*.

---

[3] *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630-632 (1959), which Grimaldi invokes, concerns an unseaworthiness claim against a shipowner and has no bearing on this dispute. In *Kermarec*, the substantive law of New York was in direct conflict with the applicable maritime law—a conflict that does not exist here between New Jersey state law and maritime law. Grimaldi's reliance on *Kermarec* is therefore misplaced.

In dismissing the terminal operator, the Court recognized that "cargo loading …

traditionally fall[s] within the province of the vessel owner and the stevedore" and rejected each

of plaintiff's attempts to hold the terminal operator liable "for failing to regulate activities in which

it took no part." *Id*. Finally, the Court further found that the terminal operator "did not have a duty

to inspect equipment that it did not own." *Id*. The *Clark* case, which is directly on point with this

dispute, makes clear that, far from being in conflict with maritime law, *McBride*'s holdings are

directly consistent with the tenets of federal maritime law. Grimaldi's attempt to exclude *McBride*

from this Court's consideration therefore fails.

Grimaldi further attempts to interject federal maritime law concerning a wharfinger's duty

to provide a reasonably safe berth, but this line of cases is completely irrelevant here. Wharfinger

duty cases are limited to the physical condition of the berth — not to a permittee's contractor's

equipment or operations. *See In re Petition of Frescati Shipping Co., Ltd.*, 718 F.3d 184 (3d Cir.

2013) (The wharfinger's duty is limited to "'exercis[ing] reasonable diligence in ascertaining the

condition of the berths and if there is any dangerous obstruction, to remove it, or to give due notice

of its existence to vessels about to use the berths.'") (quoting *Smith v. Burnett*, 173 U.S. 430, 433

(1899)). No party alleges that the Fire was caused by any physical defect in Berth 18.  Grimaldi's

suggestion that the wharfinger's duty includes "equipment and personnel inspections and

approvals" and "fire-protection" is a gross mischaracterization of its scope and is unsupported and

contradicted by caselaw. *See, e.g., Complaint of Nautilis Motor Tanker Co., Ltd.*, 85 F.3d 105, 116

(3d Cir. 1996) (The wharfinger's duty does not include "ensur[ing] safe surroundings or warn[ing]

of hazards merely in the vicinity.").

>    **D.    *McBride*, not *Golden Touch*, applies here because Grimaldi had exclusive possession and control over Berth 18 and its own cargo operations, which caused the fire**

The facts of this case are not at all analogous to those in *Leonard v. Golden Touch Transportation of New York Inc.*, 144 F. Supp. 3d 640 (D.N.J. 2015), and align much more closely with *McBride* and its maritime equivalent – *Clark*, above. In *Golden Touch*, the shuttle bus company was granted non-exclusive permission to provide transportation services at Newark Airport and the accident occurred when a passenger tried to access the shuttle bus from the Port Authority's property. Given those facts, the Court found that a property operator could have a duty of care to someone accessing its premises in reaching the vehicle.

Here, the Berth Application, which incorporated the terms of the Tariff, granted exclusive possession of Berth 18 to Grimaldi for the duration of the period covered by the application.[4] The Tariff further assigned complete responsibility and control over Grimaldi's cargo operations to Grimaldi, and imposed on Grimaldi a duty to ensure those operations were conducted in a safe manner. And the cause of the Fire – Grimaldi's loading operation – occurred on the ship or in locations entirely under the control of Grimaldi and its agents and not under the supervision of the Port Authority.

The *Golden Touch* court did not "reject" *McBride*; it distinguished *McBride* because the permit in that case did not confer exclusive possession or sole responsibility for maintenance/repair. *See* Grimaldi's Sur-Reply at 8. Grimaldi's mischaracterization of *Golden*

---

[4] As stated in PANYNJ's Moving Brief, a berth may be occupied by only one ship or vessel at a time. Accordingly, when PANYNJ approves an application to berth at Port Newark, the permittee is granted exclusive possession of the subject berth for the duration of the period covered by the application. *See* PANYNJ's Moving Brief at 5, n.7.

*Touch* should be rejected. That limitation is inapplicable here: the Berth Application gave Grimaldi exclusive possession of Berth 18 and the Tariff placed sole responsibility for Grimaldi's own cargo operations on Grimaldi.

## II.    Grimaldi's Arguments About The USCG/NTSB Investigation Do Not Preclude Judgment On The Pleadings Against It

### A.    The stipulation confirms that PANYNJ had no role in cargo operations

Grimaldi argues that the stipulation in the USCG/NTSB investigation that the Port Authority does not engage in cargo operations is "irrelevant" because Grimaldi does not claim that PANYNJ is at fault for participating in cargo operations.[5] Grimaldi's Sur-Reply Brief at 9. Grimaldi misses the point entirely. The language of the Tariff, paired with Grimaldi's own confirmation and admission in the stipulation that PANYNJ had no involvement in cargo operations, fatally undermines any argument that PANYNJ owed a duty to supervise, inspect, or approve the equipment used by Grimaldi's contractors in the cargo operations Grimaldi controlled (not PANYNJ). Accordingly, the stipulation is dispositive of one of the central issues in this Motion. Moreover, even without the stipulation, Grimaldi concedes in its Sur-Reply that PANYNJ did not engage in cargo operations. Grimaldi's Sur-Reply Brief at 10.

### B.    46 U.S.C. § 6308 bars consideration of Peter Montella's USCG investigation testimony

Grimaldi argues that Peter Montella's testimony is admissible because it is "NTSB factual evidence" and therefore 46 U.S.C.A. § 6308 does not preclude its admissibility. Grimaldi's Sur-

---

[5] The stipulation, which was agreed to by Grimaldi, Ports America, and AMS, the only parties involved in cargo operations at Berth 18, is available for download at the following link to the NTSB docket for the investigation, docket #26: https://data.ntsb.gov/Docket/?NTSBNumber=DCA23FM039.

Reply Brief at 10. Grimaldi is incorrect. 46 U.S.C.A. § 6308 provides that "no part of a report of a marine casualty investigation . . . including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings." 46 U.S.C. § 6308(a). The statute's purpose is to encourage candid and complete disclosure during safety investigations by protecting participants from having their statements used against them in subsequent litigation. Similarly, under 49 U.S.C. § 1154(b), "[n]o part of a report of the [NTSB], related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." The report necessarily includes the investigatory materials on which it is based. *See, e.g.*, *In re Eternity Shipping, Ltd.*, 444 F. Supp. 2d 347, 363 n.56 (D. Md. 2006) (excluding USCG interview transcript as part of report). Mr. Montella's testimony was obtained during the joint USCG/NTSB investigation into the Fire. Regardless of whether that testimony is characterized as USCG or NTSB material, it was generated as part of the very investigatory process that both § 6308 and § 1154(b) were designed to protect and therefore is inadmissible.

While courts have differing viewpoints on whether investigatory materials are admissible, the well-reasoned view is that they are not admissible because that is consistent with the protective statutory intent. PANYNJ's Reply Brief at 9.[6] *See Cox Operating, LLC v. Atina M/V*, 683 F. Supp. 3d 557, 561 (E.D. La. 2023). Regardless, even if Mr. Montella's testimony were admissible, it is irrelevant to this Motion because it is grossly mischaracterized for the reasons previously stated in

---

[6] Even the case that Grimaldi relies upon notes that courts have doubted the admissibility of USCG hearing transcripts and acknowledges that the decision to find them admissible in that case was a "close call." *Matter of Coeymans Marine Towing, LLC*, 822 F. Supp. 3d 686, 699 (E.D. Va. 2026).

PANYNJ's Reply. PANYNJ's Reply Brief at 9-10.[7] Pursuant to both the Lease between PANYNJ and the City of Newark and municipal regulations, the City of Newark has exclusive jurisdiction over firefighting at the Port—a point that Grimaldi continues to ignore and which is not contradicted in any way by Mr. Montella's testimony. PANYNJ's Moving Brief at 13-14.

### III.   Grimaldi's Reference To The Plausibility Standard Does Not Save It From Judgment On The Pleadings

Finally, Grimaldi argues that the Court should deny PANYNJ's Motion based on the plausibility standard because Grimaldi has made a "plausible showing of its claims." Grimaldi's Sur-Reply Brief at 11-12. Grimaldi's argument fails because its claims are factually implausible as a matter of law.

As discussed above, the Tariff expressly disclaims PANYNJ's responsibility for stevedoring/cargo handling. Ex. A, Tariff at 18, Subrule 34-150. On a Rule 12(c) motion, the Court may consider incorporated documents like the Tariff, and Grimaldi's alleged "facts" cannot override the clear governing documents. Because the Tariff disclaims PANYNJ's responsibility for Grimaldi's stevedoring/cargo handling and only reserves rights, Grimaldi's allegations that PANYNJ owed inspection/supervision duties are implausible as a matter of law. *See, e.g.*, *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the

---

[7] Grimaldi argued in its Opposition Brief that Mr. Montella's testimony purportedly establishes that PANYNJ offered firefighting response training to the Newark Fire Department, that PANYNJ knew that vehicle fires on Ro-Ro vessels were a deadly and growing threat, and that PANYNJ knew that the Newark Fire Department was unprepared to handle a marine fire. Grimaldi's Opposition Brief at 5-6. However, Mr. Montella did not make any of those statements at the hearing. *See* PANYNJ Reply Brief at 9-10.

written instrument will control."); *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018) (affirming dismissal of plaintiff's complaint upon finding claim implausible where exhibits to complaint contradicted plaintiff's allegations).

Moreover, based on the Lease and the municipal firefighting regulations, PANYNJ was not responsible for firefighting or firefighting training, and Grimaldi's allegations regarding firefighting responsibility are also implausible as a matter of law. *See* Ex. B, Lease, Section 21(B) at 19; Newark Department of Public Safety § 2:22-4.2(a). Because the claims asserted by Grimaldi against PANYNJ are not based on plausible allegations, the Court should grant PANYNJ's Motion.

## CONCLUSION

Based on all of the foregoing reasons, all claims asserted against PANYNJ should be dismissed in their entirety with prejudice.

Dated: August 5, 2026

By:    /s/ *Jeffrey J. Greenbaum*

Jeffrey J. Greenbaum
Beth S. Rose
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500
jgreenbaum@sillscummis.com
brose@sillscummis.com

SQUIRE PATTON BOGGS (US) LLP
Mark Sheridan
382 Springfield Avenue
Summit, New Jersey 07901
t:  (973) 848-5681

-11-

f:  (973) 848-5601
mark.sheridan@squirepb.com

Attorneys for Claimant/Third-Party
Defendant/Third-Party Plaintiff
THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY